# McCune's Estate.

*Wills—Testamentary character of paper—Evidence.*

1. A paper in the following form is not testamentary in character: "I want you, E. A. Kerr, to look after my property and if I don't sell it, I will sign it over to you for taking care of me." Such a paper does not indicate any intention or purpose on the part of the maker to thereby make a disposition of his property after his death.

2. As the paper is absolutely free from ambiguity on its face, extrinsic evidence as to the maker's intention, is inadmissible.

Argued October 1, 1919.   Appeal, No. 106, Oct. T., 1919, by John P. Findley, from decree of C. P. Westmoreland Co., May T., 1918, No. 264, dismissing appeal

from Register of Wills in Estate of J. H. McCune, alias J. Harvey McCune. Before BROWN, C. J., STEWART, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Appeal from register of wills, admitting a paper writing to probate as a will.

The court dismissed the appeal.

John P. Findley appealed.

*Error assigned* was the decree dismissing the appeal.

*Lewis C. Walkinshaw,* with him *John H. Stephens,* for appellants.—The paper was not testamentary in character: Morrow's App., 116 Pa. 440; Book v. Book, 104 Pa. 240; Parker's Est., 4 D. R. 221; McGrory v. Fisher, 260 Pa. 152; King v. McKinstry, 32 Pa. Superior Ct. 34; Jacoby's Est., 190 Pa. 382; Todd's Will, 2 W. & S. 145; Brinker v. Brinker, 7 Pa. 53.

*Harry E. Cope,* with him *Jeffery W. Taylor* and *Thomas G. Taylor,* for appellee, cited: Tozer v. Jackson, 164 Pa. 373; Beaumont's Est., 216 Pa. 350.

OPINION BY MR. JUSTICE STEWART, January 5, 1920:

What here immediately follows is a copy of a certain written instrument which was admitted to probate by the register of wills of Westmoreland County, 22d April, 1918, as the last will of J. H. McCune, a resident of said county, who died 13th April, 1918, aged upwards of sixty years, unmarried, leaving only collateral kindred: "I want you, E. A. Kerr, to look after my property and if I don't sell it, I will sign it over to you for taking care of me. Received from E. A. Kerr $140.00 in cash and tax recits $32.15. J. H. McCune."

It need only be added that prior to his decease the said J. H. McCune was and had been an ordinary laborer, with very limited education, frugal and indus-

trious, though given at times to excessive drink. He was the owner of a house and lot in the Borough of Seward, which he had leased to tenants, and had committed the collection of the rents therefor, the making repairs to the property and the payment of taxes thereon, to E. A. Kerr as his agent. From the decree of the register admitting to probate the original of the above instrument, John P. Findley, a nephew of the deceased, appealed to the orphans' court. Two distinct questions were raised by the appeal: first, was the signature to the alleged will the genuine signature of J. H. McCune? and, second, was the instrument probated a testamentary writing? The proceeding on the appeal in the orphans' court was de novo and considerable testimony was taken, the greater part of which had relation to the second question raised. The learned court ruled the appellant's contention adversely on both grounds and accordingly affirmed the decree of the register, dismissing the appeal at the cost of appellant. From this order and decree of the court we have the present appeal.

The assignments of error bring before us for consideration the question of the correctness of the court's ruling with respect to the legal sufficiency of the paper to constitute a testamentary act. Out of the several assignments we select this one for discussion because upon its determination the issue must depend. We omit from the discussion the assignments relating to the genuineness of the signature for reasons which will appear later. Was the paper that was probated testamentary in its character? That is to say, does the paper itself disclose an obvious purpose or intention on the part of the maker to thereby make a disposition of his property after his death? If it does, no matter how inappropriate it may be in form, if in substance it is the disposition of property to take effect after the death of the maker, the law will hold it to be testamentary. "The law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language tech-

nically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form, or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and if this appear to be the nature of its contents, any contrary title or designation which he may give it will be disregarded": Jarman on Wills, vol. 1, 333. It is sufficient to cite from our own cases as supporting and enforcing this common law rule: Patterson v. English, 71 Pa. 454; Frew v. Clarke, 80 Pa. 170.

The definition of a will with which all are most familiar is that given by Blackstone, which, though it has undergone several verbal changes—without improvement, be it said—stands unchallenged for its simplicity and accuracy. A will, Blackstone says, is a legal declaration of one's intention which he wills to be performed after his death. The essence of this definition is that it is the disposition to take effect after the declarant's death. Except as that purpose can be derived, the paper cannot be testamentary in character, whatever else it may be. It is needless to multiply authorities in support of this plain proposition. Applying this test here, what is there in the propounded paper from which any inference could be derived that it was intended as a posthumous destination of the maker's property? There can be but one answer to this, and that as it seems to us is—there is nothing. Every expression and every intendment to be derived contemplates something to be done in the lifetime of the maker of the instrument, while not a single word used can, without doing violence to its established and ordinary meaning, be held to relate to a period subsequent to the maker's death. The only disposing clause is this, "I want you, E. A. Kerr, to look after my property, and if I don't sell it, I will sign it over to you for taking care of me." He could only sell it in his lifetime, and, in the event of his not selling it, it is equally clear that his purpose or promise, whichever it was, to sign it over to Kerr, whether by deed or will, was sub-

ject to like limitations as to the period within which he, a living person, was to do it. He did not sell it, nor did he ever sign over the property to Kerr; this failure on his part may have defeated expectations, but it raises no ambiguity in the paper itself, and therefore it is that the extrinsic evidence offered by the proponent and admitted to establish testamentary disposition, and on which the court relied almost wholly to support his conclusions, judging from the opinion filed, was irregular and without warrant. We are not insisting upon an inflexible adherence to the rule that excludes parol evidence when offered to contradict, add to or explain the contents of a will. We concede that the rule has been sometimes relaxed in cases where the issue has been a question of the execution of the instrument, or undue influence, or testamentary capacity; but we know of no case where its admissibility has been allowed where the issue was the testamentary character of an instrument absolutely free from ambiguity on its face such as this was. When the latter is the case, whether a testamentary disposition can be derived from the paper is a question exclusively for the court, and the answer must be found within the four corners of the instrument itself. But waiving this, if we look into the testimony adduced, its irrelevancy and inadequacy for the purpose intended becomes apparent. It consists of conversations which several of the witnesses had with McCune a year or more before the execution of the paper in which McCune, upon being asked by one if his property was for sale, replied that it was not, "that he was going to leave it to Kerr for attending to my business"; when asked the same question by another, his reply was "that he expected to keep it; that he would get a little income from it and that he guessed when he was done with it Kerr ought to have it; that he [Kerr] had had enough trouble with him to get it." Nothing said by McCune in either conversation conflicts with anything appearing in the written instrument, nothing that explains or simplifies

anything therein, and nothing that bears, even in remote degree, upon the one question in the case—was it McCune's understanding when he executed the paper that it was only to become operative after his death? We repeat—the paper contains not a single expression that indicates a testamentary purpose in connection therewith, while the language of the paper negatives any such purpose in that it provides for the completion and execution of the proposed gift by the act of McCune himself in signing over the property (whatever that may mean) upon his failure to make sale of the same.

For the reasons given, the decree and order of the court below are reversed and the probate of the paper by the register of wills is set aside and annulled.