## Glass' Estate

*Thomas B. K. Ringe* and *George W. Hoft*, for exceptant.
*Ralph C. Busser* and *Robert W. Archbald, Jr.*, contra.

STEARNE, J., November 19, 1937.—Exceptions have been filed to the ruling of a hearing judge in an appeal from probate that the endorsement on an unsealed envelope containing securities was not testamentary in character, and was therefore not entitled to probate as a codicil to the probated will. Exceptions were also taken to the rejection of extrinsic evidence as to decedent's testamentary intent.

Following the probate of the will, upon the opening of decedent's safe deposit box, the envelope in question, containing the securities, was found. The endorsement read as follows:

"Property of Charles C. Gearhart
    "c/o John Wanamaker,
        "Philadelphia ·
"To my Executor—
    "Please deliver enclosed to Mr. Gearhart at
                            "the above address.
                        "Sara C. Glass
"Held for safe keeping".

The endorsement was in typewriting except the signature, the genuineness of which is conceded. The phrase "Held for safe keeping" was admittedly in decedent's handwriting.

The initial inquiry arises: Is this paper writing testamentary in character, and if so, should it be admitted to probate as a codicil?

A will is a disposition of a person's estate to take effect after death. A most comprehensive discussion by Chief Justice Kephart as to what constitutes a will may be found in Knoll, Executrix, v. Hart, Executrix, 308 Pa. 223, 226, et seq. As pointed out in this opinion, the form is immaterial; the intent "is to be gathered from the legal import of the words he employed". The chief justice points out that if the maker intended the paper to be "effective at death" it is a will. Where, however, the in-

strument creates a present interest, but postpones the enjoyment of the estate, it is not a will.

An illustration of this principle may be observed in Wolfe's Estate, 284 Pa. 169, where the form of the will was a promissory note, but with added words indicating an intent that the paper was testamentary in character. It was probated as a codicil to the will.

It is to be observed that the words in question do not in themselves grant any interest, either in præsenti or in futuro. On the contrary, their sole import is that the contents of the envelope constitute the property of Mr. Gearhart, held by decedent for safe keeping, with a direction to the executor to deliver the securities to the owner. Certainly there is no suggestion expressed or implied by the use of these words that there was intended a gift inter vivos or a bequest. On its face the paper is but a declaration of ownership.

The direction to the executor to deliver does not constitute the writing a will. Such a delivery contemplates a mere corporal act relating only to custody: See Jacoby's Estate, 190 Pa. 382, 392:

"But the delivery of the box is a mere corporal act which relates only to its custody. Not a word containing any testamentary intent or purpose, express or implied, appears in the writing. There is not the least reference to the contents of the box or to any paper or thing therein contained. That it is to be delivered to Stevenson after the death of Jacoby imports nothing but a physical and necessary change of the custody of the box. Jacoby being dead, some one must have the custody which Jacoby held until the moment of his death. This, and this alone, is the full and absolute import of the words. . . . Had there been any words which directed Stevenson to do anything with the contents, such as to deliver the envelopes which had names on them to the persons named, or to see that the contents were properly distributed, or words of a similar import, it might be that a testamentary intent might be attributed to them."

A somewhat similar situation arose in Little's Estate, 36 Pa. C. C. 372. In that case, as here, the package was to be delivered by the executor, such directions being found in a larger envelope marked "Property of A". The court said, at page 376, and these words have particular application to the present case:

"It is evident the testatrix did not intend these papers to be a part of her will or to form a codicil to it. It is a transaction separate and apart from the will; in other words, if anything, it is an unexecuted gift intended to be completed by the executor, who in making a delivery of the proposed gift was not to act as an executor, but only as a messenger. He had no duty to perform except to deliver the paper to Miss Marquis. Such papers are not testamentary. Jacoby's Est., 190 Pa. 382; Patterson v. English, 71 Pa. 454; Streeper v. Zimmerman, 75 Pa. 147."

It is urged that extrinsic evidence should have been admitted to establish decedent's testamentary intent. The learned hearing judge correctly ruled that the writing was clear and unequivocal, and therefore evidence was inadmissible to create an ambiguity: Wusthoff v. Dracourt, 3 Watts 240; Best v. Hammond, 55 Pa. 409.

The correctness of the rule is apparent from the words of the Supreme Court in McCune's Estate, 265 Pa. 523, 527:

"We are not insisting upon an inflexible adherence to the rule that excludes parol evidence when offered to contradict, add to or explain the contents of a will. We concede that the rule has been sometimes relaxed in cases where the issue has been a question of the execution of the instrument, or undue influence, or testamentary capacity; but we know of no case where its admissibility has been allowed where the issue was the testamentary character of an instrument absolutely free from ambiguity on its face such as this was. When the latter is the case, whether a testamentary disposition can be derived from the paper is a question exclusively for the

court, and the answer must be found within the four corners of the instrument itself."

But even though the writing was ambiguous, which in our opinion it is not, the offers of proof rejected by the hearing judge all appear to be wholly ineffectual to establish testamentary intent. Certainly delivery to appellant of lists of securities with statements that he was to receive such securities at decedent's death; that decedent cut and used the coupons; receipts of bond brokers, deposits of money in banks, are all irrelevant and immaterial to the present issue.

The exceptions are dismissed and the decree dismissing the appeal is affirmed.