## Zell's Estate.

Argued January 12, 1938.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*William T. Connor,* with him *John R. K. Scott, Hardie
Scott, Robert B. Ely, 3rd,* and *Martin F. Hatch,* for ap-
pellant.

*D. J. McTighe,* of *Fox & McTighe,* with him *William K. Rhodes,* for appellee.

OPINION BY MR. JUSTICE LINN, March 21, 1938:

The following typewritten instrument signed by Charles A. Zell, was admitted to probate by the Register of Wills at the instance of Anna M. Shupert, named in it as beneficiary.

"State of Pennsylvania,
"County of Delaware:

"I, CHARLES A. ZELL, being of sound mind and body do hereby request that my Administrators hand over to Anna M. Shupert, of Newtown Square, Pa., immediately upon my death, an envelope marked for her, in my Safe Deposit Box in the Bryn Mawr National Bank, which shall contain FIFTY THOUSAND and 00/100 ($50,000) DOLLARS, and over, worth of first mortgages, stocks and bonds; in addition to this she is to be given fifteen (15) shares of Denny Tag Co., West Chester, Pa., and eighty (80) shares of Bryn Mawr Ice Co. stock. If this envelope does not contain said FIFTY THOUSAND and 00/100 ($50,000) DOLLARS and over, worth of first mortgages, stocks and bonds, and said fifteen (15) shares of Denny Tag Co., West Chester, Pa. and Eighty (80) shares of Bryn Mawr Ice Co. stock, then my Administrators are hereby ordered to take out of my Estate such stocks that will make up this said FIFTY THOUSAND and 00/100 DOLLARS ($50,000.00) and over.

"I direct my Administrators to carry out this bequest at once, regardless of the date of my last will.

"(Signed)   CHARLES A. ZELL.

"Witness:

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Sworn and subscribed to before me this
       day of 1936."

No other will was found. Zell died November 8, 1936, without issue, but leaving a widow and a sister, now the appellant. His property was inventoried at $106,108.35. The probated instrument was found after Zell's death in a safe deposit box which, since 1928, had been held jointly by him and the beneficiary in the Bryn Mawr National Bank. It was what is commonly called a carbon copy; the original or face copy was found unexecuted among other papers left by decedent in his desk. The fact that he chose to execute the carbon and to leave the face copy unsigned does not, therefore, make the signed one less effective for the purpose for which he intended it.[1] Decedent and Miss Shupert had an intimate acquaintance of many years' standing. She testified that he dictated the will to her and that she typewrote it and gave it to him in duplicate some time in June, 1936. Decedent's sister, Mrs. Kirk, appealed to the Orphans' Court where the action of the Register was sustained. She then brought the case here, where, as her counsel states it, the only question is whether the instrument is testamentary.

With questions that may arise at distribution we can now have no concern. If the instrument is a legal declaration of Zell's intention directed to be performed after his death it is a will. Illustrations of the application of this test to various instruments will be found in *Turner v. Scott,* 51 Pa. 126; *Frew v. Clarke,* 80 Pa. 170; *Wilson v. Van Leer,* 103 Pa. 600; *Harrison's Estate,* 196 Pa. 576, 46 A. 888; *Megary's Estate,* 206 Pa. 260, 55 A. 963; *Losch's Estate,* 264 Pa. 58, 107 A. 375; *Davis's Estate,* 275 Pa. 126, 118 A. 645; *McCune's Estate,* 265 Pa. 523, 526, 109 A. 156; *Wolfe's Estate,* 284 Pa. 169, 130 A. 501; *Knoll v. Hart,* 308 Pa. 223, 162 A. 228; *Gibson's Estate,* 128 Pa. Super. Ct. 44, 193 A. 302. These

---

[1] Compare *Dawson's Estate,* 277 Pa. 168, 120 A. 828; *Bates's Estate,* 286 Pa. 583, 134 A. 513; *Ford's Estate,* 301 Pa. 183, 151 A. 789.

cases need not be considered at length because we regard the testamentary character of this instrument too clear for elaborate discussion.

On the other hand, appellant's position is that the testimony[2] shows decedent, "if he intended to do anything, [intended] to set aside on or before June 6, 1936, fifty thousand dollars' and over worth of mortgages, stocks and bonds for the benefit of Miss Shupert," that is, to make a gift inter vivos, and that he never completed it. Cases dealing with that subject were referred to in the brief.

The language of the instrument shows that Zell's intention was testamentary.

The first significant direction is to his "Administrators," to "hand over . . . immediately upon my death" certain property which is described as being "marked for her" and also by stating where it will be found; the administrators are also instructed that "immediately after my [his] death" "in addition to this [i. e., the property just referred to] she is to be given" certain shares of stock. Such provisions, in an instrument prepared by a layman, can have only one meaning; they show he was making a disposition of property to become effective at his death. No present interest was passed. This is made clearer by the next provision, directing his administrators "to take out of my Estate such stocks that will make up" the $50,000 "and over," if the envelope described does not contain them. It is true that it is not at once apparent what he meant by the last direction "to carry out this bequest at once, regardless of the date of my last will." In trying to understand what he meant by those words various suggestions are made but they must be laid aside as mere conjecture. We are satisfied that the direction does not destroy the obviously testamentary character of what precedes it, and that

---

[2] The case was considered and disposed of in the court below on the evidence taken before the Register of Wills.

the purpose and intention, earlier expressed in words that leave no doubt, cannot be set aside by the obscurity of the last sentence. Compare *Megary's Estate*, 206 Pa. 260, 55 A. 963; *Gibson's Estate*, 128 Pa. Super. Ct. 44, 193 A. 302.

The testamentary character of the instrument being apparent on its face, it was the duty of the court to give it effect: *Tranor's Estate*, 324 Pa. 263, 188 A. 292.

Decree affirmed; costs to be paid by appellant.