### Callahan Estate

*Robert M. Gilkey*, for contestant.

*John V. Wherry*, for proponent.

ROWLEY, P. J., January 9, 1952.—This matter is before the court upon appeal by R. C. Farver, first

cousin of decedent, on behalf of other first cousins, from an order of the register of wills which admitted to probate a certain written instrument as the last will of M. J. Callahan, deceased. The probated instrument is set out at length.* The initial paragraph thereof recites:

"Agreement made this 5th day of September 1946 between M. J. Callahan of Greene Twp., Mercer County, Pa., Party of the First Part,

and

J. H. Tanner & Essie Tanner, his wife."

---

* Agreement made this *5th* day of September, 1946, between M. J. Callahan of Greene Twp., Mercer Co., Pa., Party of the First Part,

and

J. H. Tanner & Essie Tanner, his wife, of West Salem Twp., Mercer Co., Pa., Parties of the Second Part.

WHEREAS, First Party is, and has for many years been, a near neighbor of Second Parties, and since the recent death of his brother is living alone and desiring to be in a comfortable home with good food and proper care has proposed to Second Parties, for the payments, and as hereinafter set forth, to make his home with said Second Parties who are agreeable.

NOW THEREFORE THIS AGREEMENT WITNESSETH:— That for Mutual and valuable considerations the Parties hereto agree, as follows:

First Party, will pay Second Parties the monthly sum of forty ($40.00) on the 5th of each month beginning Oct. 5, 1946, for which Second Parties agree to furnish First Party a comfortable bedroom, good board and do necessary washing, in other words, Second Parties will furnish First Party a good home in their farm house in West Salem Twp., Mercer Co., Pa., or elsewhere, in case said house as a home is no longer available, and will continue so doing, that is, furnish a good home to First Party, somewhere, for and during the term of his natural life; said First Party, however, to pay for Doctor, Nurse, Hospital or other expenses incidental to serious sickness of said First Party; to all of which Parties hereto agree and bind themselves, their heirs and representatives, and in addition to the said 40.00 monthly payment, I, M. J. Callahan, in appreciation of so being kept and cared for and given a comfortable home and good meals, and being confident that such will continue, hereby give and convey whatever property I may have remaining, be the same real estate, securities, Bank deposits or otherwise, at my death, to said J. H. Tanner and wife

The paper, after reciting that the parties have been neighbors and that Callahan desires to make his home with the Tanners, continues:

"First Party, will pay Second Parties the monthly sum of forty ($40.00) on the 5th of each month beginning Oct. 5, 1946, for which Second Parties agree to furnish First Party a comfortable bedroom, good board and do necessary washing, in other words, Second Parties will furnish First Party a good home in their farm house in West Salem Twp., Mercer Co., Pa., or elsewhere . . . and will continue so doing, that is, furnish a good home to First Party, somewhere, for and during the term of his natural life; said First Party, however, to pay for Doctor, Nurse, Hospital or other expenses incidental to serious illness of said First Party; to all of which Parties hereto

---

or their heirs, and so that transfer thereof may be, should necessity arise or representative required, I do hereby, and now, appoint the First National Bank of Greenville, Pa., for that purpose and should that bank not then be operating, authorize the Orphan's Court of Mercer Co., Pa., to appoint another Mercer Co. Pa. Bank with same power.

|  |  |  |
|---|---|---|
| Witness, mark M. J. Callahan | his<br>M. J. Callahan | (SEAL) |
| Witnesses present: Erla Smith | | |
| W. H. Phillips | mark<br>J. H. Tanner | (SEAL) |
| J. M. Hittle | Essie Tanner | (SEAL) |

STATE OF PENNSYLVANIA ⎱ SS.
COUNTY OF MERCER ⎰

Personally appeared before me, the undersigned authority, M. J. Callahan, J. H. Tanner, and Essie Tanner, above parties, who acknowledged the foregoing, to the end that same might be made a matter of record as desired or required.

Witness my hand and Notarial Seal this 5th day of Sept. 1946.

J. M. Hittle          (SEAL)

J. M. HITTLE, Notary Public
My Commission Expires Mar. 9, 1947.

agree and bind themselves, their heirs and representatives."

Immediately after the foregoing quotation we find the following:

"and in addition to the said $40.00 monthly payment, I, M. J. Callahan, in appreciation of so being kept and cared for and given a comfortable home and good meals, and being confident that such will continue, hereby give and convey whatever property I may have remaining, be the same real estate, securities, bank deposit or otherwise, at my death, to said J. H. Tanner and wife or their heirs, and so that transfer thereof may be (made) should necessity arise or representative required, I do hereby, and now, appoint the First National Bank of Greenville, Pa. for that purpose. . . ."

Contestants argue that the entire paper is a contract or agreement and therefore was not entitled to be probated as a will.

Proponents say that the concluding paragraphs of the paper are testamentary and must be probated notwithstanding that the instrument contains some earlier provisions not of testamentary character.

Contestants state three questions are involved. We shall first consider the third reason, which contestants state thus:

"*III.* If (the writing) found to be testamentary in character, was the writing, executed by the mark of the maker, with his name subscribed, properly executed and probated under the Wills Act?"

Briefly stated, this objection is that proponents must prove by two witnesses that decedent executed the paper by mark, and witnesses must prove the need for signing by mark.

The paper purports to have been signed by decedent and by Tanner and wife. The names of three witnesses appear on the attestation. From a mere inspec-

tion of the instrument it might be argued that each witness attested the signature of only one of the three signers. It is just as likely that the witness Erla Smith was the last witness to sign and, there being only two lines for witnesses, which were occupied by the names of W. H. Phillips and J. M. Hittle, Erla Smith signed in the most available space. However, there is no need to speculate inasmuch as all three persons named as witnesses made the required affidavit of witnesses as to the execution by decedent by mark. These three witnesses subsequently appeared before the register and deposed:

"M. J. Callahan made his mark to the said will for the reason that he was unable to sign his name because of his physical disability and for the reason that his hand shook so much that he was unable to sign his name."

We do not understand that contestants complain that the subsequent oaths were not taken previously to the order for probate. In our opinion proponents offered due proof of decedent's execution by mark.

Contestants submit two other questions:

"*I.* Was the writing before the Court intended by the decedent to be his last will and testament?

"*II.* Was the writing before the Court testamentary in character?"

Contestants argue that the instrument must be viewed as a whole. They say the words used "do not purport to be dispositive at death, for there is nothing ambulatory about them. The only reasonable construction is that it is an effective contract securing to the parties present rights and imposing upon the parties irrevocable duties." To support the contention, contestants cite Book v. Book, 104 Pa. 240, where it was held:

"An instrument of writing, in order to operate as a testamentary disposition, must be ambulatory and

revocable in its nature; if upon delivery interests vest, though to be enjoyed in possession in futuro, or obligations are created which are enforceable by the parties respectively, such instrument is a contract inter vivos and not a will."

Concededly, the first part of the instant instrument was a contract for support of decedent by the Tanners. By that part of the writing the parties respectively acquired certain rights and assumed certain obligations.

If it is not possible to consider the later provisions for disposition of decedent's estate at his death apart from the earlier provisions, then we should be obliged to declare that disposition invalid as a will. Contestants say the paper is either a will or a contract, that it cannot be both, citing Hileman et al. v. Bouslaugh, 13 Pa. 344, where it was said:

"It must be exclusively so (a will), or it is a deed; for there is no middle ground; and no will, as this instrument did, ever passed the property in the donor's lifetime."

In the Hileman case, those claiming under a deed argued for a liberal interpretation—such as is accorded a will—of the terms employed in the instrument to enlarge the estate granted. Possession had been taken under the instrument on the claim that it was a deed. If the instrument had been a will the beneficiaries would have acquired no present vested interest. The court held that one could not claim present title on the theory of a deed and then claim an enlarged title by interpreting the instrument as a will.

It is obvious that an instrument dealing with specific property cannot be both a will and a deed because the deed carries a present title and is irrevocable, whereas a will conveys no present title and is revocable.

The probated paper dealt with two subjects. Decedent first contracted for his care and maintenance. We think it cannot be said that so much of the instrument amounted to a disposition of any specific property. Having contracted for his care, decedent added to the instrument the following:

"I, M. J. Callahan, in appreciation of so being kept and cared for, etc., and being confident that such will continue, hereby give and convey whatever property I may have remaining . . . at my death to said J. H. Tanner and wife . . . and so that transfer thereof may be (made), should necessity arise or representative required, I do hereby, and now, appoint the First National Bank of Greenville, Pa., for that purpose."

Under the first part of the paper decedent obtained the right to be supported by Tanner, and the Tanners acquired the right to the compensation specified.

Under the latter part of the paper, the Tanners acquired no present right to any part of decedent's estate as it then existed. Decedent did not bind himself to retain any property until his death for the benefit of the Tanners. Immediately after executing the instant instrument, decedent had the full right to dispose of all of his property by grant or gift, and Tanners would have had no standing to complain.

Is it unwarranted to apply part of a written instrument to a specific subject and to accord the balance of the instrument effect as to different property and only after death?

If the latter part of the instant instrument was physically separated from the contract for support, we think no one would doubt that it was a will. We are now to decide whether its inclusion in the agreement nullifies what would otherwise have been its effect. The specific question is, Is this the will of decedent?

Blackstone defined a will as: "The declaration of a man's intentions, which he wills to be performed after his death": II Blackstone 499. This definition stands unchallenged for its simplicity and accuracy: McCune's Estate, 265 Pa. 523; Gibson's Estate, 128 Pa. Superior Ct. 44.

The form is immaterial if in effect it is a testamentary disposition: Frew v. Clarke, 80 Pa. 170. The designation by decedent's attorney of the paper as an agreement is not decisive. A contrary title or designation will be disregarded: Frew et al. v. Clarke, supra; McCune's Estate, 265 Pa. 523.

"A will is defined to be the legal declaration of a man's intentions, which he wills to be performed after his death (citations). An instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will (citation). It may be by an endorsement on a note (citation); or by letter (citation). Whatever be the form of the instrument, if it vests no present interest, but only directs what is to be done after the death of the maker, it is testamentary (citation). The essence of the definition is, that it is a disposition to take effect after death (citation); nor does it matter that the person intended to make a note instead of a will. If he used language which the law holds to be testamentary, his intention is to be gathered from the legal import of the words he employed: (Id) No form of words is necessary to make a valid will. The form of the instrument is immaterial, if its substance is testamentary": Frew et al. v. Clarke, 80 Pa. 172.

It must be conceded that no property was transferred presently to the Tanners by the written instrument whether it be viewed as a whole or otherwise. The Tanners acquired at most a chose in action. What-

ever effect the paper may have had upon decedent's estate, it was not effective until his death.

We quote from McCune's Est., 265 Pa. 523:

"Was the paper that was probated testamentary in its character? That is to say, does the paper itself disclose an obvious purpose or intention on the part of the maker to thereby make a disposition of his property after his death? If it does, no matter how inappropriate it may be in form, if in substance it is the disposition of property to take effect after the death of the maker, the law will hold it to be testamentary. 'The law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form, or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and if this appear to be the nature of its contents, any contrary title or designation which he may give it will be disregarded:' Jarman on Wills, Vol. 1, 333. It is sufficient to cite from our own cases as supporting and enforcing this common law rule: Patterson v. English, 71 Pa. 454; Frew v. Clarke, 80 Pa. 170."

The question above propounded, "Does the paper itself disclose an obvious purpose or intention on the part of the maker to thereby make a disposition of his property after his death?", as applied to the instant paper, must, we think, be answered in the affirmative, for the declaration of decedent is; I give and convey whatever property I may have remaining at my death to said J. H. Tanner and wife.

In Kimmel's Estate, 278 Pa. 435, it was said:

"While the informal character of a paper is an element in determining whether or not it was intended to be testamentary (Kisecker's Est., 190 Pa. 476), this becomes a matter of no moment when it appears there-

by that the decedent's purpose was to make a post-humous gift. On this point the court below well said: 'Deeds, mortgages, letters, powers of attorney, agreements, checks, notes, etc., have all been held to be, in legal effect, wills. Hence, an assignment (Coulter v. Shelmadine, 204 Pa. 120), . . . a deed (Turner v. Scott, 51 Pa. 126), a letter of instructions (Scott's Est., 147 Pa. 89), a power of attorney (Rose v. Quick, 30 Pa. 225), and an informal letter of requests (Knox's Est., 131 Pa. 220), were all held as wills.' "

In Kimmel's Estate, supra, a letter was held to be testamentary in character. The letter read in part:

"Plenty of snow & verry verry cold. I dont want to see it this way but it will will come see to the old sow & take her away when the time comes well I cant say if I will come over yet. I will wright in my next letter it may be to ruff we will see in the next letter if I come I have some verry valuable papers I want you to keep fore me so if enny thing happens all the scock money in the 3 Bank liberty lones Post office stamps and my home on Horner St goes to George Darl & Irvin Kepp this letter lock it up it may help you out. Earl sent after his Christmas tree & Trimmings I sent them he is in the Post Office in Phila working. Will clost Your Truly
Father"

If inclusion in the same paper of directions as to care of the "old sow" and report on Earl's Christmas tree, etc., did not nullify the instructions as to what disposition of his property was to be made "if enny thing happens", then the inclusion in the same paper by the instant decedent of provision for his care during his lifetime with a disposition of his property after his death would certainly not nullify the posthumous disposition.

Contestants rely heavily upon Book v. Book, 104 Pa. 240. In that case Jacob Book executed a written

agreement with Michal H. Book wherein it was recited that Jacob, for the consideration of $5, and further consideration "doth covenant and agree to sell" unto M. H. Book a certain tract. The agreement provided that Jacob should retain possession and enjoyment of the land while he lives. Upon Jacob's death M. H. Book was to have full and entire possession and enjoyment of the tract. M. H. Book bound himself to build a house upon the tract within a year, which he was to keep in repair, and to pay Jemima $150 per year for her life. Jacob was to use the premises so as not to depreciate their value. Jacob was to pay the taxes. The court said (p. 245):

"It is very clear that for the breach of some of these covenants, at least, the parties respectively would have had a right of action against each other. If Michael, for example, had refused to build the new house or make the stipulated repairs, it cannot be doubted his father would have had a right of action against him for damages. These and other characteristics of the instrument clearly distinguish it from a will, which, being intended to take effect upon the death of the testator and not before, is ambulatory and revocable during his life, while, on the other hand, the paper under consideration is a contract between two parties, securing rights and creating obligations which are enforceable by the parties respectively, and not revocable at the pleasure of either."

The fact that the instant paper is sealed by decedent and by the Tanners does not affect the posthumous disposition.

In Hoffert's Estate, 65 Pa. Superior Ct. 515, husband and wife joined in signing and *sealing* a paper which declared:

"Whereas we have agreed to and with each other, and do hereby will". etc., naming ultimate beneficiaries.

After death of the wife, the husband made another will with other beneficiaries. The court held that the paper was a will and that the survivor might revoke it. Apparently, the court did not deem the affixation of a seal a sufficient consideration to make the paper a contract.

In Cawley's Estate, 136 Pa. 628, cited by contestants, the Supreme Court said:

"Although these instruments (will and contract) are so unlike, they may be, and sometimes are combined so as to give a testamentary character to what purports to be a contract, or to convert a will into an irrevocable agreement. Whether any given writing is a will or a contract, must be determined by the character of its contents, rather than from its title, or any formal words with which it may begin or conclude. The familiar form of a will is that by which the testator directs how his property shall be disposed of after his death."

Fellbush v. Fellbush, 216 Pa. 141, cited by contestants, holds that the distinguishing characteristic of a will is that it "is not to operate until after the death of the maker."

O'Connor's Estate, 273 Pa. 391, held that:

". . . if a document offered for probate is testamentary in character, is executed in the manner provided by statute, and its purpose is that the whole or any part of the estate of the maker is to be given, after his death, to the distributees named therein, it is in law a will and may be probated as such, though in form a deed or contract."

Coulter v. Shelmadine, 204 Pa. 120, says:

"Whatever be the form of the instrument, if it vests no present interest, but only appoints what is to be done after the death of the maker, it is testamentary."

In Turner et al. v. Scott, 51 Pa. 126, a father executed an indenture, with general warranty, for a tract of

land in fee, in consideration of love and affection. The deed provided: "this conveyance in no way to take effect till after the decease" of the grantor. The court held the instrument to be testamentary and therefore revocable. In its discussion the court cites Habergham v. Vincent, 2 Ves. Jr. 204, where the question was; "whether two instruments, one in form a will and the other in form a deed, did not together constitute a will . . . the case was greatly considered." The conclusion was "as upon the whole the intention was that it should have a future operation after death, it was considered a will."

Onofrey et al. v. Wolliver et al., 351 Pa. 18, like the instant case, involved a writing signed by decedent and two daughters. Decedent and daughters had signed a bank deposit card the printed portions of which recited that the account was a joint account, and that in case of death the bank was to treat the survivor as the absolute owner thereof. However, in handwriting above the printing appeared these words: "Pay to Dtrs only after death of mother." The court held:

"It is well settled that when an interest becomes effective only *after death*, the document creating the interest, whether bank account, deed, check, note or other paper, is regarded as *testamentary in character*, and must be treated as such."

In Knoll, Executrix, v. Hart, Executrix, 308 Pa. 223:

"Edward Hart established a successful publishing house in Easton, Pennsylvania. Wishing to reward Edmund Knoll, who was in his employ, for his faithful service, he delivered to Knoll an instrument reciting that the two had established a successful business, and that since Hart recognized the value of Knoll's services and was desirous of compensating him, that he, Hart, thereby sold, assigned, and transferred to Knoll, his heirs and assigns, a one-third interest in the property, . . . 'the actual possession by Ed-

mund E. Knoll of said one-third interest to become effective at and immediately upon my decease.' 'I do further bind my heirs, executor or administrator . . . to make, execute and deliver . . . such . . . instrument in writing as may be deemed essential or necessary to fully vest possession . . . in said Edmund E. Knoll.' "

The court held the foregoing instrument to be testamentary and therefore revoked by a later will.

In Gibson's Estate, ·128 Pa. Superior Ct. 44, decedent had employed a printed judgment note, striking out the printed provisions of the note and inserting in handwriting other provisions. The written interlineations are italicized.

*"Regardless of will or wills, 90 days* after date *of my death must collect from my estate and* ~~promise to~~ pay to the order of *Jennie Negley $5.00 a week from 18 to 25 years of age for labor Hannahtown Butler Co. Pa. $2500. Hundred dollars for Property near* Dollars *which was not allowed to be given her through Will.* Without Defalcation, Value Received, with Interest

"And further *she can* ~~do hereby~~ empower any Attorney", etc., then follows the usual confession of judgment.

The court held the testamentary character of the gift was not affected by the recital of a reason for the gift; nor by the phrase "regardless of will or wills", nor by the judgment clause.

The question whether a certain paper is testamentary in character is governed by two decisive elements: Is it to be operative only after death of the maker? Is it ambulatory and revocable?

The dispositive portion of the paper by its own terms makes it effective only after death of the maker. No present interest in any part of his estate is vested by the provision, consequently it was revocable through sale or gift by testator in his lifetime without infringement of any right of the Tanners.

We find nothing in the cases which would render inoperative the testamentary provision merely because it is included with an agreement for support. We think our conclusions are in harmony with the principle that:

"Wherever a party has the power to do a thing (statute provisions being out of the way), and means to do it, the instrument he employs shall be so construed as to give effect to his intention." Bond v. Bunting, 78 Pa. 210.

### Order

And now, January 9, 1952, it is ordered, adjudged and decreed that this appeal be dismissed and the order of the register of wills be affirmed.