## Bright Estate

*Harry D. Gottlieb,* for appellant.

TAXIS, P. J., October 6, 1971.—On July 2, 1971, a document was presented to the Register of Wills for probate as the last will and testament of J. Calvin Bright. It was a two-page instrument duly signed by the decedent, and properly witnessed by Harry D. Gottlieb, his attorney, and Mr. Gottlieb's wife, Matilda D. Gottlieb. The register refused probate, ruling that the document was only a copy of decedent's will, and this appeal ensued.

The register's decision was based on the fact that the document was a "Xerox" copy or duplicate of a typed original. The evidence reveals that the typed original, or "ribbon copy" was copied by the Xerox process as soon as prepared, and the Xerox copy was executed by testator thereafter. It was the only document which testator signed.

This estate is small, but the issue posed represents a test case of sorts, for it has been represented to the court that many wills now exist which have been prepared in this fashion. It is therefore highly important to determine whether or not the physical method of their preparation might prevent or interfere with their probate.

We have little difficulty in sustaining the appeal.

Undoubtedly, the law should, if at all possible, stay abreast of modern technical improvements. Apart from this, however, the issue raised here is basically no different from that which was raised in Zell's Estate, 329 Pa. 312. There, the Supreme Court allowed the probate of a carbon copy of a typed original, where only the carbon had been signed by the testator, the ribbon copy having been found unsigned at his death. The important language of the court, page 314, was, "If the instrument is a legal declaration of Zell's intention directed to be performed after his death, it is a will."

The physical means of preparaing a will logically should not be of controlling importance in determining whether or not it may be probated. The Wills Act of April 24, 1947, P. L. 89, sec. 2, requires only that a will be "in writing," subject to a minor exception not relevant here. Appellant has cited cogent excerpts from "Page on Wills," sec. 19.6, and Smith and Aker, "Will Drafting in Pennsylvania," sec. 1.2C which are clear in stating that a will may be written by any means, including pen, printing, lithograph, typewriter and others, and on any material or surface, and it would be absurd to exclude the xerox method from this encompassing list.

Appellant also argues that there is a distinction between a "copy" and a "duplicate" of a document, alluding to Zell's Estate, supra, wherein the Supreme Court said that a carbon copy is not really a copy since the impression is made at the same time as the ribbon copy. This is correct, no doubt, but we find it unnecessary to delve into these semantic distinctions here. Whether the present document physically is a "duplicate" because made by a process which conforms it unalterably to its original, or a "copy" since it was

made after the ribbon copy by another and separate technique, it is clear that testator adopted *its* contents as the expression of his intention concerning his estate after his death, and personally executed *it* in pursuance of that intention.

We find no particular dangers in our decision. Indeed, with reference to the possibility of alteration, a xerox is probably superior to a ribbon copy because of the inherent difficulty in concealing changes or additions made after the xerox is produced. Nor does our ruling have anything to do with the proof of a lost, stolen or unintentionally destroyed will, or the application of the presumption of revocation to such situations. For all testamentary purposes, the present document is an executed original. What makes it so is not its method of preparation but its purposeful adoption as an original by the testator. In and of itself, it neither suggests nor refutes the possibility that another "original" may exist. Cf. Baker Estate, 26 D. & C. 2d 373. But it is of no moment whether or not other "originals" exist; even if they did, this would not prevent probate of the document now before us: Dawson's Estate, 277 Pa. 168.

Therefore, we enter the following

## DECREE

And now, October 6, 1971, the appeal from refusal of probate is sustained, and the register is directed to admit to probate the document dated January 13, 1971, entitled the "Will of J. Calvin Bright, a/k/a John C. Bright," without regard to the fact that it was prepared for testator's signature by the xerox process, and to grant letters testamentary thereunder to the party or parties who shall be entitled thereto.