## Jenkins Estate

*Jacob S. Russin,* for appellant.
*Albert H. Aston, Sr.,* for appellee.

BIGELOW, *J.*, September 9, 1977—

## DECISION

Jane W. Jenkins died on October 24, 1953. On December 15, of that year, her daughter Rachael Jenkins ("Rachal") offered for probate a will, dated February 25, 1947, and letters testamentary were issued to her by register of wills. No appeal was taken from the register's decision. Approximately two years later, however, decedent's son, William L. Jenkins ("William") offered for probate another instrument, entitled "Agreement" bearing the date of November 19, 1952. When the register refused probate to the second instrument, William appealed to this court. On his petition, a citation issued to Rachal to show cause why the appeal should not be sustained. She filed an answer alleging that the signature on the agreement is not decedent's or, if genuine, that it was procured by such undue influence, fraud, or duress as to make it void. In such posture, the matter came on for hearing before another judge of this court. The stenographer's record was lodged September 28, 1965. At the close of appellant's case, the hearing court closed the record for the purpose of making two preliminary determinations: whether the evidence adduced established prima facie the genuineness of decedent's signature and, if so, whether the second instrument constitutes a testamentary writing entitled to probate. It is to these questions we now turn our attention.

The writing offered for probate by William was admitted into evidence as appellant's Exhibit number 1 and, in its entirety, is as follows:

## "AGREEMENT

"THIS AGREEMENT made and concluded this 19th day of November, 1952, by and between Jane W. Jenkins, of the Township of Plains, County of Luzerne, State of Pennsylvania and William L. Jenkins of the City of Wilkes-Barre, County of Luzerne, State of Pennsylvania. WITNESSETH:

"That Whereas, there were certain debts represented by judgments in the office of the Prothonotary of Luzerne County to wit; $8300.00 debt entered by the First National Bank of Wilkes-Barre, Pennsylvania, and $4000.00, debt entered by Mollie T. Kent of Wilkes-Barre, Pennsylvania.

"Whereas, the said William L. Jenkins promised and agreed to pay and satisfy the aforementioned debts or judgments.

"Now, Therefore, in consideration of the said William L. Jenkins, my son, having kept his promise and agreement to my entire satisfaction and for other reasons best known to myself, I, Jane W. Jenkins, his mother, being of sound mind, memory wisdom and understanding, hereby revoking and making void all other agreements, testaments and wills, heretofore made and affecting the standing of my son, William L. Jenkins, do agree to restore, devise and bequeath his full share of all my earthly possessions and property, real, personal and mixed of whatsoever kind wheresoever situated.

"Further, I hereby constitute and appoint my son William L. Jenkins to act as my representative in purchasing a monument for the family burial plot in Dennison Cemetery, lot No. 8 and to have the FAMILY NAME of 'Jenkins' inscribed thereon. The cost not to exceed $1000.00.

"IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals this 19th day of November, 1952."

The question of "wheter a testamentary disposition can be derived from the paper [is a question] exclusively for the court, and the answer must be found within the four corners of the instrument itself." McCune's Estate, 265 Pa. 523, 527, 109 Atl. 126 (1920); although where "a real doubt or real ambiguity" exists, extrinsic evidence is admissible to show the decedent's intent: Moore Will, 443 Pa. 477, 479-480, 277 A.2d 825 (1971).[1]

The operative language of this document is contained in the fourth paragraph, in which decedent "hereby revoking and making void all other agreements, testaments and wills, heretofore made and affecting the standing of my son, William L. Jenkins, *do agree to restore, devise and bequeath* his full share of all my earthly possessions and property, real, personal and mixed of whatsoever kind and wheresoever situated." (Emphasis supplied.) To us the clear meaning of its words is that this writing does not itself devise or bequeath anything to William; it merely states the decedent's agreement to do so. We express no view as to whether it might be an enforceable contract to make a will, for now "[i]t will suffice to say that if a further or additional act or writing is con-

---

1. The fact that the present instrument is entitled "Agreement" is not in itself determinative for "[a]writing need not assume any particular form or be couched in language technically appropriate. . . to take effect as a will or codicil." Hengen's Estate, 337 Pa. 547, 549, 12 A.2d 119 (1940). For "illustrations of the application of this test to various instruments" see cases collected in Zell's Estate, 329 Pa. 312, 314, 198 Atl. 76 (1938).

templated by an alleged testatrix in order to make a written document her (or his) will or codicil, the writing is *nontestamentary* in nature. Richards Will, 439 Pa. 5, 264 A.2d 658." Moore Will, supra, at p. 479. (Emphasis in original.)

This determination, however, does not end our inquiry. For decedent prefaced her agreement with the phrase that she was "hereby revoking and making void all other agreements, testaments and wills, heretofore made . . . ." It remains, therefore, to be determined whether this language worked a revocation of the probated will of February 25, 1947. Section 5 of the Wills Act of April 24, 1947, P.L. 89, as amended, then prevailing, provided that: "No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than: '(1) Will or Codicil. By some other will or codicil in writing, '(2) Other Writing. By some other writing declaring the same, executed and proved in the manner required of wills, . . ."

William has testified that the document admitted as appellant's exhibit 1 was signed by his mother in his presence. Rachal Thomas Arndell, decedent's sister, testified that she was familiar with decedent's handwriting and that "absolutely it is her signature." Prima facie, therefor, decedent's signature on the agreement in question was "proved by the oaths or affirmations of two competent witnesses" in the manner required of wills by section 4 of the Wills Act of 1947. The agreement thus qualifies as "some other writing" sufficient to revoke the prior will.

The present record, of course, consists only of appellant's case and our present determination is equally limited. We hold only that the case made out by appellant is sufficient to establish, prima

facie, decedent's signature on the document admitted into evidence as appellant's exhibit no. 1. If ultimately found genuine, free and voluntary, such signature would work a revocation of the prior will. But these are factual issues which remain to be determined. Before they may be considered, the record, regrettably so long closed, must be reopened and the appellee afforded the opportunity to present her case. And so, we enter the following

## ORDER

It is hereby ordered that hearing of the above-captioned matter be resumed on October 12, 1977, at 10:00 o'clock a.m., in the Orphans' Court Room, Luzerne County Court House, at which time appellee shall be afforded the opportunity to present such evidence as she may desire.