# Book *versus* Book.

1. An instrument of writing, in order to operate as a testamentary disposition, must be ambulatory and revocable in its nature; if upon delivery interests vest, though to be enjoyed in possession in futuro, or obligations are created which are enforceable by the parties respectively, such instrument is a contract inter vivos and not a will, and therefore is not revoked by a subsequent will of one of the parties thereto.

2. The instrument in question in this case held to be an agreement for the sale of land, and not a will.

3. Turner *v.* Scott, 1 P. F. S. 126, distinguished.

October 10th 1883. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON J., absent.

ERROR to the Court of Common Pleas of *Lawrence county:* Of October and November Term 1883, No. 143.

Ejectment, by Nathan Book against Mary Book, Andrew

Wells (tenant), Charles Book, John Book, Dellie Book, Essie Book, minors, by John S. Conner, guardian, for a tract of land in Shenango township, containing 50 A. 62 P. Plea, not guilty.

On the trial, both parties claimed through Jacob Book, in whom title was admitted to have been vested in fee simple on and prior to December 22d 1875. On that day said Jacob Book executed and delivered to his son Michael A. Book, the following instrument of writing:

Articles of agreement made this twenty-second day of December, A. D., One Thousand Eight Hundred and Seventy-five, between Jacob Book, party of the first part, and Michael H. Book party of the second part; both of Shenango township, Lawrence county, Pennsylvania.

Witnesseth: That the said Jacob Book, for the consideration of five dollars to him in hand paid by said M. H. Book, the receipt whereof is hereby acknowledged, and for the further consideration hereinafter mentioned, for himself, his heirs, executors and administrators doth covenant and agree to sell and assure unto said M. H. Book, his heirs and assigns, all that certain tract or piece of land situated in Shenango township, in the county and state aforesaid, bounded and described as follows, to wit: On the north by other part of same tract contracted to be sold to Aaron Book; East by Hog Hollow public road; South by lands late of Thos. Berry, deceased, and of Samuel Jackson and West by lands of Samuel Jackson and John McCay,—containing fifty acres and sixty-two perches, being the south half of the larger tract, the legal title to which is in the said Jacob Book; the division line to be parallel or nearly so with the south line of the tract, it being the purpose and intent hereby to sell to said M. H. Book the residue of the tract not heretofore bargained to said Aaron Book. The said Jacob Book to retain the possession and enjoyment of said land while he lives; he to use the premises in such reasonable manner so as not to deteriorate or depreciate their value and he to pay all taxes thereon while he so lives, and upon his death the said M. H. Book to have full and entire possession and enjoyment thereof.

In further consideration whereof the said M. H. Book hereby covenants and agrees during the next year (1876) to either build upon said land a comfortable farm dwelling house, or repair the present dwelling house upon the land so as to make it reasonably comfortable, and from time to time during the lifetime of said Jacob Book to keep the building in such repair as to make them reasonably suitable and comfortable for use, and to have the use of such timber or other materials as may be found upon the land for that purpose, and upon or

after the death of the said Jacob Book, he, the said M. H. Book, shall pay to the said Jacob's daughter, Jemima Book, during her natural life the sum of one hundred and fifty dollars annually, to be paid in semi-annual installments of seventy-five dollars each, on the first days of April and October of each year, upon the first installment to pay the proportion of said sum for the time intervening between Jacob's death and said payment, and thereafter to pay seventy-five dollars each successive period of six months.

Said M. H. Book further agrees that after the death of said Jacob, said Jemima, while she remains unmarried, shall have a room for her use and occupancy (but not to have the power to lease or let the same) in the dwelling upon said farm, or at his option he to provide her a room in another building upon said farm for such use and occupancy. The title to said farm, if not made to said M. H. Book in fee by said Jacob Book in his lifetime, shall be made so to him by said Jacob's legal representatives so as to assure to said M. H. Book, his heirs and assigns the land and premises herein before described.

In witness whereof said parties have hereunto set their hands and seals the day and year first above written.

JACOB BOOK.          [L. S.]<br>
MICHAEL H. BOOK.  [L. S.]

Witnesses present,

(The word "annually" inserted in 21st line, second page, before signing.)

E. T. KURTZ.
D. B. KURTZ.

The defendants objected to the admission of the above paper in evidence on the ground that it was testamentary in its character, and was not properly proved as such. Objection overruled, the court stating that the question would be reserved. Exception.

A little more than a year after the date of the above paper, Michael H. Book was adjudged a bankrupt, and at the assignee's sale of his assets the plaintiff purchased his interest in the land in dispute.

On June 10th 1881, Jacob Book died, leaving a will dated February 7th 1878, proved September 2d 1882, whereby he revoked all wills previously made, and devised the land in dispute to his son Aaron Book in fee simple. Aaron Book died intestate a short time before the death of his father, leaving as his heirs at law the defendants, who as such took possession of the land in dispute on the death of Jacob Book, and claim title under his will.

The defendants presented the following points :

1. That the paper purporting to be a contract between

[Book v. Book.]

Jacob Book and M. H. Book offered in evidence by plaintiff, conveyed or gave to said M. H. Book no present or vested interest or estate in the land described in said contract, and was therefore void and ineffectual to give said M. H. Book any estate or interest whatever in said land.

2. That said contract or agreement was testamentary in its character so far as Jacob Book was concerned, and was revocable by him.

3. That the will of Jacob Book, offered in evidence by defendants, revoked said former will in form of a contract, and gave the land in dispute to his son Aaron Book, and defendants are entitled to hold said land as heirs of said Aaron Book and under the last will of Jacob Book.

Answer. " The questions of law raised by the first, second and third points are reserved for future consideration, and the jury instructed pro forma to return a verdict for plaintiff, and right reserved to enter judgment for defendants non obstante veredicto."

4. If court be of opinion that plaintiff is entitled to recover at all, then the verdict must be conditional that the plaintiff perform all the covenants or stipulations contained in the said contract under which he claims.

Answer. Affirmed. The counsel for the plaintiffs and defendants have agreed on the conditions that shall be returned as part of your verdict under these instructions.

Therefore we instruct you to return a verdict for the plaintiffs for the land described in the writ of ejectment, conditional that the said plaintiffs pay Jemima A. Book within three months after judgment is obtained, if so, in this case, the sum which may then be due her by the terms of the contract between Jacob Book and M. H. Book under which plaintiffs claim, and give mortgage on said premises with the accompanying bond in the penal sum of $2,000, conditioned to pay said sum then due, and pay to said Jemima $75 every six months thereafter during her natural life ; said bond to be so limited that payment can be only enforced out of said premises, and to provide that any installment can be collected if not paid when due.

This is your verdict, and we so record it.

After argument, upon a motion for judgment for defendants on the reserved points, non obstante veredicto, the court entered judgment for the plaintiffs upon the verdict and points reserved. The defendants thereupon took this writ of error, assigning for error the admission in evidence of the instrument of December 22d 1875, the answers to the defendants' first three points, and the entry of judgment for the plaintiff.

*Oscar L. Jackson* (*McMichael & McConnell* with him), for the plaintiffs in error.—The language of the paper and the circumstances of the parties (as shown by the evidence on the trial) indicate that the intention of both Jacob Book and Michael H. Book was that the paper in question should operate only upon the death of Jacob Book. It is immaterial what the parties called the instrument, or even what they intended, if the words are such that is only to take effect upon the death of the maker. A valid will may be in the form of a deed, or a letter, or even an indorsement on a note : 1 Redfield on Wills 170, §§ 7, 8, and cases cited in note 18 ; Habergham *v.* Vincent, 2 Ves. Jr. 204 ; Green *v.* Proud, 1 Mod. 117 ; Morrell *v.* Dickey, 1 Johns. Ch. 153 ; Hunt *v.* Hunt, 4 N. H. 434 ; Turner *v.* Scott, 1 P. F. S. 126 ; Rowan's Appeal, 1 Cas. 292 ; Frederick's Appeal, 2 P. F. S. 338 ; Schad's Appeal, 7 Norr. 111 ; Wilson *v.* Van Leer, 7 Out. 600.

*D. B. & E. T. Kurtz* (*R. B. McComb* with them), for the defendants in error, cited : Meck's Appeal, 1 Out. 313 ; Mack & Person's Appeal, 18 P. F. S. 231 ; Johnson *v.* McCue, 10 Casey 180 ; Taylor *v.* Mitchell, 6 Nor. 518 ; Brinker *v.* Brinker, 7 Barr 55.

Mr. Justice STERRETT delivered the opinion of the court, October 22d 1883.

The sole question in this case is whether the sealed instrument, executed December 2d 1875, by Jacob Book and his son Michael, is a testamentary disposition of the land therein described, or a contract for the sale of the same by the father to his son. If it is a contract, the verdict and judgment are clearly right. On the other hand, if it is a testamentary disposition of the property, it was revoked by the subsequent will of Jacob Book, and the judgment is erroneous.

As was said by Mr. Justice SHARSWOOD in Bond *v.* Bunting, 28 P. F. Smith 210, " It is certainly the tendency of all the modern authorities to maintain the general doctrine, which may be stated as a formula, that whenever the party has the power to do a thing (statute provisions being out of the way) and means to do it, the instrument he employs shall be so construed as to give effect to his intention." Tested by this principle the question is of easy solution. In form, the instrument upon which the contention hinges has all the features of a contract. It is impossible to read it without coming to the conclusion that both parties regarded it as an agreement for sale of the land, on terms therein specified. It contains mutual covenants of the parties by which they respectively bound themselves to the performance of certain things. They each acquired rights and assumed reciprocal obligations which took effect, not upon

[Book v. Book.]

the death of Jacob Book but immediately upon the execution of the instrument. By the terms of the instrument, Jacob Book not only became entitled to the consideration money therein mentioned, but he acquired the right to the erection of a new dwelling-house or the repair of the old one, and thereafter during his life, to have the buildings so kept in repair, at the expense of his son Michael, as to make them reasonably comfortable and suitable for use. He also secured for his daughter Jemima the right to receive one hundred and fifty dollars annually, during life, and a room in the mansion house. for her own use while she remained single. On the other hand, Michael acquired the right to take timber and other materials from the land for the building and the repairs he agreed to make; also the right to require his father to pay all taxes and "to use the premises in such reasonable manner as not to deteriorate or depreciate their value," and at his father's death, if not before, to have the legal title to the land assured to him by an appropriate conveyance. It is very clear that for the breach of some of these covenants, at least, the parties respectively would have had a right of action against each other. If Michael, for example, had refused to build the new house or make the stipulated repairs, it cannot be doubted his father would have had a right of action against him for damages. These and other characteristics of the instrument clearly distinguish it from a will, which, being intended to take effect upon the death of the testator and not before, is ambulatory and revocable during his life, while, on the other hand, the paper under consideration is a contract between two parties, securing rights and creating obligations which are enforcible by the parties respectively, and not revocable at the pleasure of either without the assent of the other. It is not necessary that a contract for the sale of real estate should vest in the vendee a right of immediate and exclusive possession. It is enough if it creates, as the contract in this case did, a vested interest to be enjoyed in possession, in futuro. According to the intention of the parties, as expressed upon the face of the instrument under consideration, it can have effect and operation only as an agreement for the sale of land.

It is claimed by plaintiffs in error that this case is within the principle recognized in Turner v. Scott, 1 P. F. Smith 126; but a cursory examination will show that the cases are widely different. In that case, the instrument was in the form of a deed of conveyance in which, however, it was expressly provided that the "conveyance is in no way to take effect until after the decease of John Scott, the grantor;" and the habendum was to have and to hold the premises "after the decease of said John Scott." By the very terms of the instru-

ment the idea of a presently vested interest in the grantee was excluded. The words employed are an emphatic declaration that no interest shall be considered as presently conveyed so as to interfere in any way with the life estate; and the habendum is equally explicit in declaring that the estate intended to be conveyed shall not commence until the death of the grantor. It was manifestly a disposition of the property to take effect after death and not before; while the instrument under consideration took effect immediately and created a vested interest which could not be divested by the subsequent will of Jacob Book.

Judgment affirmed.