## Copeland's Estate.

Argued October 9, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*E. J. Gannon,* with him *Charles P. Walter,* of *Hazlett, Gannon & Walter,* for appellants.

*Frederick E. Milligan,* for appellee, Trustees for Synod of the Reformed Presbyterian Church of North America.

*Rabe F. Marsh* and *Rabe F. Marsh, Jr.,* for appellee, Mary Elizabeth Campbell.

OPINION BY MR. JUSTICE SIMPSON, November 27, 1933:
These two appeals are by the residuary legatees of the Estate of James R. Copeland, deceased, from a decree of distribution of the Orphans' Court of Westmoreland

County, allowing, as debts due by the estate, the separate and distinct claims of the two appellees. We are of opinion that the claim of Mary Elizabeth Campbell was properly allowed, and that of the Trustees of the Synod of the Reformed Presbyterian Church of North America should have been rejected. We will consider them in the order stated.

Mrs. Campbell was a borrower from the Parnassus National Bank, of which decedent was president. As found by the auditing judge and approved by the court in banc, A. C. Campbell, a son of the claimant and a nephew of the decedent, had been rendering services to the latter for several years without pay. In order to induce him to continue so to do, testator agreed that if he, the son, did so "during the rest of decedent's life, that he [decedent] would pay the indebtedness of the son's mother, this claimant, to the Parnassus National Bank." The son agreed thereto, and, undisputedly, fully performed his part of the contract. The claim was allowed. Two objections are now urged against it: The first is that some of the testimony showed that decedent said that he would "take care" of that indebtedness. There was beyond this, however, an abundance of credible evidence that decedent agreed to "pay" the indebtedness. The auditing judge, who saw and heard the witnesses, and whose duty it was to find the facts, was best able to consider the scope and effect of the testimony (Phillips's Est., 295 Pa. 349; Belmont Laboratories, Inc., v. Heist, 300 Pa. 542), and he unequivocally found that decedent made an express agreement to pay the indebtedness. That finding, being amply supported by credible evidence and approved by the court in banc, will ordinarily be accepted by this court on appeal: Robb v. Stone, 296 Pa. 482; Thorndell v. Munn, 298 Pa. 1. No reason appears why it should not be so accepted here. The second objection is that the claimant, as a donee beneficiary, could not enforce the agreement made with her son. As she was intended to be sole beneficiary, following per-

formance by her son, this is no longer an open question with us: Edmundson's Est., 259 Pa. 429; Brill v. Brill, 282 Pa. 276; Tasin v. Bastress, 284 Pa. 47; Com. v. Great American Indemnity Co., 312 Pa. 183. There was no error in allowing this claim.

The claim of the Trustees of the Synod of the Reformed Presbyterian Church of North America is in a very different category. It appears that decedent drew the will of Amelia Gailey, deceased, in which he was named as executor, legatee and devisee. When his account was audited, the net balance shown thereby was awarded to him, and he subsequently sold the realty and appropriated the proceeds thereof. It was contended by this appellee, and by the Reformed Presbyterian Women's Association and the First Reformed Presbyterian Church of Parnassus, that, at the time this decedent drew Mrs. Gailey's will, he agreed with her that whatever of her estate was received by him, would be expended by him for charitable purposes in the way she made known to him. Up to this point these three charities agree in their contention, but beyond it the record is silent. Whether their claims were mutually exclusive regarding which was entitled to take; or whether they claimed that each was entitled to get part of the residue of the Gailey Estate, which had been awarded to and retained by the present decedent, we are not told. Happily, it is not necessary that we should be, in order to decide this appeal. We do know that the court below sustained the claim of the synod, and rejected those of the other two.

A careful reading and rereading of the entire record convinces us that the findings of fact of the auditing judge—not including therein, however, the inferences he drew from those findings—are correct, and that they are all the facts which could properly have been found from the evidence. On the other hand, we are also convinced that his conclusion that the claim should be allowed is erroneous, because, in reaching it, he gave no effect to the

unbending rule, necessary in this class of cases, that such a claim will not be sustained unless the testimony in support of it is "clear, precise and indubitable": Washington's Est., 220 Pa. 204; Rocks v. Sheppard, 302 Pa. 46, 50.

The first question is: Did this decedent make such an agreement with Mrs. Gailey? On this, the court below found the facts to be that: "The only direct evidence that there was such an agreement made at the time of the execution of the will, is found in the testimony of John McCartney Kennedy. This witness testified: 'I had known Mr. Copeland all my life. ...... After the death of Mrs. Gailey he brought to my office her will and it was found that at least one of the witnesses lived outside of this district. The will was ultimately probated and letters granted to Mr. Copeland. At that time and at numerous times subsequent to it Mr. Copeland said to me that he had said to his aunt, Mrs. Gailey, that the will which she had already executed some years before should be superseded by another will for the reason that he felt that he could administer Mrs. Gailey's estate to a much better advantage to the parties than if permitted to be administered in accordance with this superseded will, which I never saw, and followed that with the statement that the entire estate of Mrs. Gailey was to be distributed by him to charities, the names of which he knew and which were agreeable to Mrs. Gailey. Q. Did he indicate to you the names of the concerns? A. He did not.' This witness further testified that he had represented J. R. Copeland when he made a gift of $60,000 'to the Trustees of the Synod for Geneva College,' to wit, on the 25th day of June, 1926. Mr. Kennedy is a very reputable attorney at this bar. We have no hesitancy in accepting his testimony as strictly accurate and true. This testimony shows clearly and indisputably that at the solicitation of J. R. Copeland, Amelia Gailey changed her will, thereby giving to J. R. Copeland her entire estate, upon the distinct promise by him that it was to be distributed

by him to charities, 'the names of which he knew and which were agreeable to Mrs. Gailey.' "

The basic statement in that finding is that this decedent said to the witness "that the entire estate of Mrs. Gailey was to be distributed by him to charities, the names of which he knew and which were agreeable to Mrs. Gailey." But this is far from being either testimony or a finding that this decedent agreed to so distribute it, in consideration of her making the will in his favor, and still further from a finding that it was to go to this appellee only. It may well be that, as the decedent was himself well-to-do, he thought he ought to distribute this fund to charities he knew Mrs. Gailey liked, or even perhaps that she believed he would do so; but nothing in it tends to establish the fact that he agreed to give it all to this appellee. So far as that testimony has any bearing, it shows that this decedent was to or intended to give the fund to "charities," not to this one charity, and this important witness admittedly does not clear up that difficulty.

Recognizing this, the court below said "The names of these charities [not appellee, as the only charity] appear from the testimony of Sarah B. Heineman," and quotes her as saying: "Q. Did he ever say anything to you about the beneficiaries who were to take the balance of the [Gailey] estate? A. Well, not other than just the church was to get it. To use his exact words, he said: 'It is mine the same as a fifty cent piece in my pocket, if I want to keep it.' He said he didn't want it, he knew what Mrs. Gailey intended should be done with it. Q. Was he ever specific as to what Mrs. Gailey intended should be done with it? A. Yes, he said she didn't want a dollar of that to go to her relations; it was meant for the Covenanter congregation as a whole, not any particular church, but as a denomination as a whole." If this is strictly interpreted in its entirety, it defeats the allegation of the existence of a trust ex maleficio, and rather tends to prove that Mrs. Gailey gave her estate to him in

the belief that he would expend it in a given way, possibly to this appellee, but nevertheless "it is mine [as he said] the same as a fifty cent piece in my pocket, if I want to keep it." There is nothing else in this witness's testimony enlarging that just quoted, and certainly it is not "clear, precise and indubitable," as showing this appellee was to get the whole of the Gailey Estate fund.

Much stress is laid by appellee upon the fact that on one occasion decedent paid $60,000 to this appellee in trust to expend it for Geneva College. The terms of the trust were, however, stipulated by decedent, not by appellee, and the writing specifically stated that it was paid because "I, the said J. Renwick Copeland, wish to create a memorial in memory of the said Amelia Gailey, and in memory of her husband, David S. Gailey, also deceased," and appellee in writing accepted the trust as specified by decedent. So appellee stresses the fact that there was testimony showing that decedent wanted a blank form to be used when he distributed the balance of the Gailey Estate fund to other charities, not the synod. No form would be needed if the latter was to get the whole of the fund. Moreover, the form prepared by the lawyer, on whose oral testimony the court below so greatly relies, recites that "I [the testator] am voluntarily endeavoring to distribute the entire amount I have received from Mrs. Gailey Estate in such a way as I believe would have met with her approval if she had seen fit to have distributed it other than to me." This is far from a recognition of a duty to pay it all to appellee. So, also, great weight is laid on the fact that decedent kept a separate ledger account of that which he received from the Gailey Estate and the income therefrom, but this also he would just as much have had to do, if, as the record clearly suggests, he was going to distribute it to charities, unstated and unknown,—not entirely to appellee—because he believed or knew that doing so was what Mrs. Gailey would desire.

32

The record is absolutely barren of even a possibility that this appellee was the only one interested under an agreement by this decedent, except, perhaps, the single clause in Mrs. Heineman's testimony: "Q. Was he ever specific as to what Mrs. Gailey wanted done with it. A. Yes, he [testator] said she [Mrs. Gailey] didn't want a dollar of that to go to her relations; it was meant for the Covenanter congregation as a whole, not any particular church, but as a denomination as a whole." At the utmost, this says she "wanted" it to go in a given way, not that they agreed he would so dispose of it. On the contrary, in that same connection, he said "It is mine the same as a fifty cent piece in my pocket, if I want to keep it." It is clear to us that the evidence to sustain this appellee's claim was far from being "clear, precise and indubitable," and hence it should not have been allowed.

The decree of the court below is affirmed so far as it relates to the award to Mary Elizabeth Campbell, and reversed so far as it relates to the award to the Trustees of the Synod of the Reformed Presbyterian Church in America, and the record is remitted that a decree of distribution may be made in accordance with the views expressed in this opinion. The costs are to be paid by the Estate of James R. Copeland, deceased.