Lewis' Estate.

Argued November 21, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

*John P. Vallilee,* for appellant.

*J. Roy Lilley,* for appellee.

OPINION BY BALDRIGE, J., March 2, 1940:

The question before us is whether a certain writing is a will. Mary Lewis, the decedent, a widow and the mother of five children, had on September 5, 1928, a savings account amounting to approximately $3,500 in the National Bank of Wyalusing. She lived on a farm seven miles from Wyalusing with her two sons, Lloyd Lewis and Bradley Lewis. The other three children, including the appellant, Lulu Lewis, left the farm and have lived in separate homes for twenty years.

On September 5, 1928, Mrs. Lewis, with her two sons, went to the bank and discussed her affairs with M. R. Stalford, cashier, who testified that he had some experience in drawing wills and that he dictated the following letter at her suggestion, for the purpose of protecting the bank:

"Sept. 5, 1928

"To the National Bank of Wyalusing
    Wyalusing, Pa.
Gentlemen:

I hereby direct that the Savings Account #516 in the National Bank of Wyalusing be made a joint account with my son Lloyd Lewis, the money to be drawn only in case of my death.

"(Signed) Mary Lewis

"Witness:
"(Signed) M. R. Stalford"

The bank attached the letter to its ledger sheet and thereafter carried the account in the name of Mary Lewis and Lloyd Lewis.

Mary Lewis died June 9, 1935. It was not until November 19, 1936, that the above quoted letter was probated as a will. Two of the decedent's children, Loren Lewis and Lulu Lewis, took an appeal from the action of the register of wills and petitioned the orphans' court to set aside the probate, alleging the instrument filed was not a will. The orphans' court sustained the probate of the paper in question as a will. This appeal by Lulu Lewis followed.

The appellant contends that this writing was but a letter of instructions to the bank, drawn for its protection; that it operated immediately and was not revocable. While a will does not have to be in any particular form or couched in technical language (*Gibson's Estate*, 128 Pa. Superior Ct. 44, 48, 193 A. 302) a paper to be valid as a will must be testamentary in character, showing an obvious intention or purpose on the part of the maker to dispose of his property after his death: *McCune's Estate*, 265 Pa. 523, 109 A. 156. Blackstone, in his Commentaries, Book 2, p. 499, states that, "A will is 'the legal declaration of a man's intentions, which he wills to be performed after his death'."

The letter was appropriately addressed to the bank, and its apparent and paramount purpose was to direct the bank to make forthwith Mrs. Lewis' savings account a joint one. It will be noted that, with the exception of the last phrase, the words all refer to present action, viz., "I *hereby direct* that the savings account ...... *be* made a joint account with my son." (Italics supplied.) Whatever interest the son acquired, he received at the time the letter was delivered and her instructions carried out by the bank.

The final phrase "the money to be drawn only in case of my death" is not inconsistent with an immediate dis-

position and does not make the writing testamentary in character. Where a present interest is vested, the fact that the actual enjoyment or payment of the money is postponed until after the death of the donor does not make the instrument testamentary (28 C. J. p. 624) as the mere deferring of payment until after the death of the maker is not of itself sufficient to make the writing testamentary: *Eisenlohr Estate (No. 2)* 258 Pa. 438, 441, 102 A. 117; *Hess v. Jones,* 335 Pa. 569, 573, 7 A. (2d) 299.

Moreover, a will must be ambulatory and capable of revocation at any time before the decedent's death. "The important and usual incident of such testamentary document is that it vests no present interest but is intended to become operative only after the death of the maker, *and until that time it continues to be ambulatory and may be revoked by* testator [citing cases]." (Italics supplied): *Wolfe's Estate,* 284 Pa. 169, 172, 130 A. 501. See, also, *Book v. Book,* 104 Pa. 240; 28 R. C. L. p. 60.

After this account had been transferred and placed in the name of Mary Lewis and Lloyd Lewis, jointly, the former had no power within herself to revoke her act and have the account placed back in her name alone: 7 Am. Jur., Banks, sec. 509; 9 C. J. S., Banks and Banking, sec. 509.

It is unnecessary to decide, and we do not now pass upon, the extent or nature of any rights arising under the instrument before us. We have confined our consideration to the action of the court below in affirming the register in admitting the letter offered for probate as Mary Lewis' will. We are all of the opinion that this writing was not testamentary in character and therefore was not a will.

For the reasons given, the decree and order of the court below are reversed and the probate of the paper by the register and recorder of wills is set aside and annulled; costs of the appeal to be paid by Lloyd Lewis.