Simun Estate.

Argued April 16, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Adolph Goldberg,* with him *Robert J. Schwerha,* for appellant.

*Harry Bowytz,* for appellee.

OPINION BY KELLER, P. J., July 16, 1943:

On April 28, 1926 John Simun and his son, George Simun, both of the City of Clairton, Allegheny County, executed a written agreement, under seal, which was duly acknowledged by both parties, and was recorded in the Recorder's Office of Allegheny County two days later, in which, inter alia, John Simun did "covenant, promise, grant and agree" to and with George Simun, his heirs and assigns, "to well and sufficiently grant, convey, and assure" unto the said George Simun, his heirs and assigns, certain fully described real estate owned by him; and the said George Simun agreed, among other considerations mentioned, to pay certain stated sums of money to certain other children of John Simun, on his death, or within one year and one day thereafter.

John Simun died June 19, 1939, leaving a will dated December 16, 1930 and admitted to probate July 21, 1939.

The question for decision is whether said agreement was testamentary in character, and was revoked by John Simun's will. The court below held that it was. In our opinion it was not.

The counter-statement of question involved, formulated by the appellee, is as follows: "Is an instrument designated as an agreement, which conveys no present interest to anyone, but which does determine what shall

be done after the owner's death, and then only through the administrators or the executors of the owner, testamentary?"

That is not a correct or fair statement of the issue involved.

After reciting that the party of the first part [John Simun] is the owner of two fully described improved pieces of real estate in the City of Clairton, and that the party of the second part [George Simun] has advanced to the party of the first part large sums of money for the improvement of said abovementioned property, as well as for the payment of the mortgages on said property, the agreement continues: "Now, therefore, for and in consideration of the payments of money hereinbefore referred to, as well as for the further considerations hereinafter mentioned, said party of the first part, for himself, his heirs, executors and administrators doth covenant, promise, grant and agree to and with the said party of the second part, his heirs and assigns, to well and sufficiently grant, convey and assure unto the said party of the second part, his heirs and assigns, the said above described property, *and in case a deed for the conveyance of said property be not made prior to the death of the party of the first part,* (Italics supplied) said party of the first part hereby authorizes, empowers and directs a good and sufficient deed for said property to be executed and delivered to the said party of the second part, by his executors or administrators, upon compliance by said party of the second part with all the considerations, conditions and provisions of the agreement. As a further consideration for this agreement, said second party agrees to pay and discharge such portions of the balance of the mortgages now existing on said property as said first party shall not be able to pay and discharge for himself and also promises and agrees to permit the first party to collect all rents and profits arising from said property during

his life time. Said first party, however, to pay all taxes, upkeep and other expenses incident to said property so long as he collects the rentals and profits therefrom. Said second party further agrees upon the death of the said party of the first part hereto, or within one year and one day thereafter, to pay the following sums to the children and heirs of said party of the first part, namely: To Rudolph Simun, $1,000, to William Simun, $1,000, to Andrew Simun, $700, to Annie Cerny, (formerly Annie Simun) and John Simun, the sum of $5 each. Upon compliance with all covenants, conditions and provisions of this agreement, the said George Simun, shall upon the death of the said party of the first part, be entitled to receive a good and sufficient deed in fee simple for said above described property without the payment of any further considerations than those mentioned and referred to herein."

It will be noted: (1) That John Simun then and there covenanted, promised, granted and agreed to well and sufficiently grant, convey and assure the said described real estate to George Simun, his heirs and assigns. This was a present and immediate grant of an equitable interest in the lands, subject to the covenants, etc., by him to be performed.

(2) That, *in case a deed of conveyance for the property was not made by John Simun prior to his death,* he authorized, empowered and directed his executors or administrators to execute and deliver a good and sufficient deed for the same to George Simun, upon his compliance with the considerations, conditions and provisions of the agreement. The agreement contemplates a conveyance by John Simun in his lifetime, in accordance with its terms, but *orders* it to be done by his legal representatives, pursuant to the terms of the agreement, if the conveyance had not been made by him prior to his death.

(3) The agreement contains no *reservation* of estate,

*rents or profits* in John Simun. On the contrary it contains a promise and agreement by George Simun that he will *permit* John Simun to *collect* all rents and profits arising from said property during his lifetime—he, the said John, however, to pay all taxes, upkeep and other expenses incident to said property so long as he collects the rentals and profits therefrom. If no present interest was intended to pass to George, why should he promise and agree to *permit John* to *collect* the rents and profits during his lifetime, in return for which John agreed to pay all taxes and upkeep expenses as long as he collected the rents?

(4) There was a valuable consideration for the agreement.

(a) John admitted that George had previously advanced large sums of money to John for the improvement of the real estate and for partial payments on the mortgages.

(b) As a further consideration, George agreed to pay and discharge such portions of the mortgages as John should not pay and discharge.

(c) George further agreed that he would pay to certain named brothers and sisters $2710 on the death of John or within a year and a day thereafter.

(5) It was agreed that on compliance by George with all the foregoing covenants, conditions and provisions, (if John, in his lifetime, had not himself conveyed the said properties to George—see clause 2 above) he, (George), should upon John's death be entitled to receive a good and sufficient deed in fee simple for said properties without the payment of any further considerations than those mentioned.

This analysis of the agreement shows that there was nothing testamentary about it. "A will must be ambulatory and capable of revocation at any time before the decedent's death. 'The important and usual incident of such testamentary document is that it vests

no present interest but is intended to become operative only after the death of the maker, *and until that time it continues to be ambulatory* and may be revoked by testator': Wolfe's Estate, 284 Pa. 169, 172, 130 A. 501. See also, Book v. Book, 104 Pa. 240, 28 R.C.L. p. 60": *Lewis' Estate,* 139 Pa. Superior Ct. 83, 86, 11 A. 2d 667.

Unlike the case of *Knoll, Executrix v. Hart, Executrix,* 308 Pa. 223, 162 A. 228 (see reference to 308 Pa. page 229), relied on by appellee, the present agreement was acknowledged by both parties and was recorded within two days after its execution. Any person who considered purchasing these properties from John Simun was thus put on notice that he had covenanted, promised and agreed to convey them in fee simple to George Simun in consideration of certain moneys already advanced by him and certain other payments to be made by him, including $2,710 to be paid to certain children of John Simun within a year and a day after his death. He would have found an agreement to convey said lands, just as clear, definite and enforceable as if John Simun had contracted to sell and convey them to a stranger for a stated consideration. After the execution and delivery of the agreement and its recording George Simun had an equitable estate in the lands which could not be revoked by John Simun or any grantee of his.

This fact was recognized by John Simun himself. For, in his will, supra, in which he gave, devised and bequeathed to George Simun all his property, real and personal of every kind and description, he used the following rather unusual phrase qualifying "property, real and personal", to-wit, "which I own or *have a right to dispose of at the time of my decease*". He thus apparently recognized that as to the lands embraced in the agreement, he could dispose of only the legal title, subject to the covenants and conditions therein created.

The will was necessary to pass to George his personal property and any real estate acquired between April 28, 1926 and the time of his death.

All of the cases cited and relied on by the appellee and cited by the court below, without exception, were unilateral instruments, such as a will, or an instrument in the nature of a deed poll, signed only by the grantor, to take effect at or after his death, without any consideration payable by the grantee.

The facts of the present case are in many respects very like those in *Book v. Book,* 104 Pa. 240. There Jacob Book, the owner of a tract of land, entered into an agreement under seal with his son, Michael H. Book, by which he covenanted and agreed to sell and assure to his son a described tract of land: "The said Jacob Book to retain the possession and enjoyment of said land while he lives; he to use the premises in such reasonable manner so as not to deteriorate or depreciate their value and he to pay all taxes thereon while he so lives, and upon his death the said M. H. Book to have full and entire possession and enjoyment thereof". M. H. Book covenanted and agreed, during the next year (1876) either to build a comfortable farm dwelling house on said land or to repair the dwelling house then on the land and keep it in such repair as to make it reasonably comfortable for use, and for that purpose to have the use of such timber and other materials as might be found on the land; and that upon or after the death of Jacob Book, the said M. H. Book should pay to Jacob's daughter, Jemima Book, during her natural life the sum of $150 annually, in semi-annual installments, and permit the said Jemima, while she remained unmarried, to have a room in said dwelling for her use and occupancy, or at his (Michael's) option provide her a room in another building on said farm. "The title to said farm, if not made to said M. H. Book in fee by said Jacob Book in his lifetime, shall be

made so to him by said Jacob's legal representative so as to assure to said M. H. Book, his heirs and assigns the land and premises hereinbefore described." The Supreme Court, speaking through Mr. Justice STERRETT, said: "The sole question in this case is whether the sealed instrument, executed December 2d, 1875, by Jacob Book and his son Michael, is a testamentary disposition of the land therein described, or a contract for the sale of the same by the father to his son. If it is a contract, the verdict and judgment are clearly right. On the other hand, if it is a testamentary disposition of the property, it was revoked by the subsequent will of Jacob Book, and the judgment is erroneous ...... In form, the instrument upon which the contention hinges has all the features of a contract. It is impossible to read it without coming to the conclusion that both parties regarded it as an agreement for sale of the land, on terms therein specified. It contains mutual covenants of the parties by which they respectively bound themselves to the performance of certain things." Then after citing the provisions above referred to, the opinion continued: "These and other characteristics of the instrument clearly distinguish it from a will, which, being intended to take effect upon the death of the testator and not before, is ambulatory and revocable during his life, while, on the other hand, the paper under consideration is a contract between two parties, securing rights and creating obligations which are enforcible by the parties respectively, and not revocable at the pleasure of either without the assent of the other. *It is not necessary that a contract for the sale of real estate should vest in the vendee a right of immediate and exclusive possession. It is enough if it creates, as the contract in this case did, a vested interest to be enjoyed in possession, in futuro.* According to the intention of the parties, as expressed upon the face of the instrument under consideration, it can have effect and opera-

tion only as an agreement for the sale of land." (Italics supplied). In that case, the deed or writing under seal,—using the term in its broad sense[1]—just as in this case, was not a *conveyance* of real estate, but only an *agreement to convey* it; and, furthermore, it did not contemplate possession of the land by the vendee, until the vendor died, and a material part of the consideration was not payable until then.

*Book v. Book,* supra, was followed and cited with approval by this court in *Anspach v. Lightner,* 31 Pa. Superior Ct. 218 and *Lewis' Estate,* 139 Pa. Superior Ct. 83, 11 A. 2d 667. In the former case, Judge PORTER —afterwards President Judge—said: "The deed was a formal conveyance in fee of two tracts of land, and while there were injected into the granting clause certain covenants and provisions with regard to the personal property of the grantor, the only exception, reservation or condition as to the land was in those words, 'the said property as aforesaid, to be and remain the property of the said [grantor] as long as she lived', which appeared in the granting clause. The habendum and the covenant of warranty are absolutely without exception, reservation or limitation. The life estate thus excepted out of the grant is not inconsistent with the passage to the grantee of an interest or title, and the deed may thus be supported upon the principles laid down by SHARSWOOD, J., in Eckman v. Eckman, 68 Pa. 460. This instrument would, the moment it was delivered, have vested in the grantee an estate in the land, to be enjoyed after the death of the grantor; it was, therefore, a deed and not a testamentary paper: Eckman v. Eckman, supra; Waugh's Executors v. Waugh, 84 Pa. 350; Book v. Book, 104 Pa. 240; Dreisbach v. Serfass, 126 Pa. 32; Cable v. Cable, 146 Pa. 451; Knowlson v. Fleming, 165 Pa. 12. These author-

---

[1] "A deed is a writing sealed and delivered by the parties". 2 Blackstone's Comm. 295.

ities rule the present case, which is clearly distinguishable from Turner v. Scott, 51 Pa. 126, in which the instrument passed upon contained this provision, 'this conveyance is in no way to take effect till after death,' and the like limitation in the habendum." The *Book* case and the Supreme Court cases cited by Judge PORTER above distinguish the present case from *Turner v. Scott,* 51 Pa. 126, relied on by appellee.

*Logan v. Glass,* 136 Pa. Superior Ct. 221, 7 A. 2d 116, (affirmed 338 Pa. 489, 14 A. 2d 306) was cited by appellant as authority for the position that the charges imposed on the land, by the agreement, in favor of certain of John Simun's children were not revocable by him. In that case Elizabeth Cox, in consideration of one dollar, by deed dated February 5, 1929, conveyed to her niece, Sarah Hooper Glass, a tract of land, "subject to the payment of the sum of Fifteen Hundred ($1,500) Dollars to Robert W. Logan, within one (1) year after my decease, as provided in my last will and testament." On August 23 of the same year, she executed and delivered to the said Sarah Hooper Glass, a second deed for the same premises, reciting the prior deed and continuing: "This deed of conveyance being now made for the purpose of extinguishing the incumbrance of Fifteen Hundred ($1,500) Dollars to which the said prior deed of conveyance was made subject to." It was held that the charge was not revoked by the second deed and that the beneficiary could enforce its payment. See also, on the last point, *Copeland's Est.,* 313 Pa. 25, 169 A. 367; *Roseberry's Est.,* 317 Pa. 45, 176 A. 216.

The assignment of error is sustained. The decree of the court below sustaining preliminary objections of the appellee to appellant's petition for specific performance, on the ground that the agreement above referred to was testamentary in character and was revoked by the will of John Simun, is reversed and the record is

remitted to the court below for further proceedings in accordance herewith.   Costs to be paid by appellee.