Onofrey et al., Appellants, *v.* Wolliver et al.

Argued May 22, 1944; reargued November 29, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

Robert J. Doran, with him Reynolds & Reynolds, for appellants.

M. F. McDonald, with him M. F. McDonald, Jr., for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, December 7, 1944:

This is a suit in assumpsit upon a written and sealed family agreement. The five plaintiffs and two defendants are brothers and sisters, children of Elizabeth Hamara, a widow, who died intestate on October 6, 1939. The agreement was executed by six of the seven children. Michael, a son, was not present when the agreement was signed, but acquiesced in it and is a party plaintiff. Plaintiffs' motion for judgment n. o. v. was refused and judgment entered on the verdict, two of the five judges dissenting, in an opinion written by President Judge VALENTINE. This appeal followed.

The agreement of the children (dated October 13, 1939) provided that the mother's entire estate "including anything upon which her name appears" should be divided equally among all seven children, and that the agreement should apply to all assets whether then known or later discovered. The issue is whether a $5,300 bank account in the First National Bank of Nanticoke in the names of the mother and two of the daughters, Susanna and Helen (the defendants), was included under the terms of the agreement.

At the time of her death the mother had four bank accounts, one in her name alone, and three in her name and that of one or more of her children. These accounts were as follows: Glen Lyon National Bank, in the names of Elizabeth Hamara and Susanna Hamara, $2,200.00; Miners National Bank of Wilkes-Barre, in the names of Elizabeth Hamara and Andrew and Susanna Hamara, $3,212.00; First National Bank of Wilkes-Barre, in the name of Elizabeth Hamara alone, $1,800.00; and First

National Bank of Nanticoke in the names of Elizabeth Hamara, Susanna Hamara and Helen Hamara, $5,-300.00. The first three accounts were distributed among the seven children in accordance with the terms of the agreement.

The bank account in question was opened on July 7, 1933. The signature card at the bank designates the account as owned by "Elizabeth Hamara [the mother] and Dtrs. Suzanna and Helen". It is signed by all three. The *printed* portion of the card reads: "It is agreed and understood that any and all sums that may from time to time stand on this account to the credit of the undersigned depositors shall be taken and deemed to belong to them as joint tenants and not as tenants in common; and in case of death of either, the First National Bank of Nanticoke is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof." *In handwriting,* appearing immediately above the printing as quoted, appear these words *"Pay to Dtrs only after death of mother".*

The existence of the deposit was unknown to the other five children and was not disclosed by the two defendants. A few hours before the execution of the agreement, and while en route to the lawyer's office to execute the same, the defendants, without plaintiffs' knowledge, went to the bank, withdrew the deposit, and divided it between them. This was admitted by the defendants at the trial, although it was unqualifiedly denied by them in their affidavit of defense. When the plaintiffs discovered that defendants had withdrawn and divided the fund, this action in assumpsit was brought against them.

It is the contention of the defendants that because of the terms creating the deposit, the fund, upon the mother's death, became the absolute property of defendants and formed no part of the mother's estate. Defendants further maintained that the family agreement was not intended to include this account. Both defendants testified that the fund deposited was jointly owned by

the mother and the two daughters. It may be noted, in passing, that this testimony was in flat contradiction of the sworn statement of the two defendants in their affidavit of defense that the money "was the sole and separate property of Susanna Hamara Wolliver". No proof was submitted as to proportion of the alleged joint ownership of the fund deposited by the mother alone or the circumstances under which the fund was accumulated or acquired.

The trial judge, at the conclusion of the testimony, submitted two questions to the jury to be answered in the form of a special verdict: (1) Did the parties intend to include this deposit under the terms of the written agreement and (2) Did the defendants agree to divide the fund equally with all brothers and sisters, and were defendants guilty of fraud in failing to divulge the fact of withdrawal and division.

We agree with President Judge VALENTINE who in dissenting said: "The case presents no question of fact, but rather one of law." It was error to permit a jury to pass upon *the interpretation of a written document.* This is a matter of *law* for the court, and not a question of fact for a jury: *Baldwin v. Magen,* 279 Pa. 302, 123 A. 815; *Dougherty v. Proctor & Schwartz, Inc.,* 317 Pa. 363, 176 A. 439; *Pears v. Shannon,* 329 Pa. 278, 198 A. 307; *Currie v. Land Title Bank and Trust Co.,* 333 Pa. 310, 5 A. 2d 168; *Decker v. Williams,* 130 Pa. Superior Ct. 100, 196 A. 910; *Kolman v. Kolman,* 335 Pa. 113, 6 A. 2d 532.

The *question of law* which this issue presents is whether, in the written agreement dividing equally "our mother's entire estate", the words "including anything upon which her name appears" include the disputed bank account.

We are in complete accord with the majority in the court below that a bank account opened as a true joint account with right of survivorship ordinarily vests a present interest in the parties, and is immediately effec-

tive. In such a situation, upon the death of one of the parties, the survivor as sole and absolute owner, is entitled to the fund. No part of the fund constitutes part of the estate of the one who dies. Where the fund had been the sole property of the deceased, the survivor, by virtue of the contract of deposit, acquires it as a completed gift. The three cases cited in the opinion of the majority of the court below are accurate expositions of the law: *Mardis v. Steen,* 293 Pa. 13, 141 A. 629; *Reap v. Wyoming Valley Trust Co.,* 300 Pa. 156, 150 A. 465; *Patterson's Estate,* 341 Pa. 177, 19 A. 2d 165.

Had the *printed* portion of the deposit card remained unmodified by any other terms, the defendants would have been joint owners of the fund, with right of survivorship, and the fund, or any portion thereof, would not have been a part of the mother's estate. The court below failed to give effect to the written words immediately preceding the printed ones: viz: that withdrawals by the *daughters* were restricted *until after the death of the mother.* Thus, while the *printed* words would have created a present interest in the daughters, the *written* words were repugnant to such a construction. Obviously it was not the purpose of the written insertion *"Pay to Dtrs only after death of Mother"* to emphasize the right of survivorship clearly stated in the printed terms. Such a construction of these words would make them meaningless surplusage. It is well settled that in construing written instruments effect must be given to *all* of the parts, if this is possible. Words cannot be deleted or construed away merely because they interfere with a reader's desired interpretation. Here, the printed words purport to give all of the persons named on the deposit card a present joint ownership in the account. The written words, however, completely negative such an intention. They expressly deny to the daughters the right to receive payment of the fund during the lifetime of the mother. The plain meaning of the insertion is that the mother, *and the mother alone,* could make withdrawals during her life-

time. If there were any ambiguity in the written words, such ambiguity would be resolved by the testimony of the bank official, who made the insertion of the written words at the decedent's request. He testified that only one withdrawal was made upon the account prior to the death of the mother, and that this was made by the mother. He was asked: "Q. To make it simple so the jury will understand; after this account was opened, and according to the agreement on your card, Susanna and Helen could both have withdrawn money, could they not? A. After the death of the mother, yes sir. Q. And during the life of the mother? A. *Not with that notation on there.* Q. Under what? Under what, Mr. Bejza? A. Pay to daughters only after death of mother. Q. Well that is above the agreement, isn't it? A. *That is part of the agreement.*" On re-direct examination he was asked, "Q. However, during the lifetime of Mrs. Elizabeth Hamara your bank paid no money to anybody but her? A. *Nobody but Mrs. Hamara.*" In the face of this evidence showing the construction placed upon the contract of deposit by the parties prior to the death of the mother, and in consideration of the plain meaning of the written words themselves, it cannot be pretended that the insertion made no change in the printed terms of the card.

Where written and printed clauses of an instrument are repugnant to each other, the printed form must yield to the written clauses, as the latter are presumed to be the deliberate expression of the real intent of the parties: *Commonwealth v. Friedman,* 121 Pa. Superior Ct. 591, 184 A. 672; *Haws v. Insurance Company,* 130 Pa. 113, 15 A. 915; *Duffield v. Hue,* 129 Pa. 94, 18 A. 566; *Grandin v. Insurance Company,* 107 Pa. 26.

We are therefore required to determine, *as a matter of law,* the effect, upon the status of the account, of the provision restricting withdrawals by the daughters until after the mother's death.

It is well settled that when an interest becomes effective only *after death,* the document creating the interest, whether bank account, deed, check, note or other paper, is regarded as *testamentary in character,* and must be treated as such. This principle was recognized by this Court in *Mardis v. Steen,* supra, which is cited by the majority in the court below. Justice FRAZER (later Chief Justice) in the opinion in that case cites with approval and discusses *Grady v. Sheehan,* 256 Pa. 377, where an account was opened as a joint account with right of survivorship, but there was an added provision that the survivor should pay the debts and funeral expenses of the one dying. As Justice FRAZER points out (page 17) such direction rendered the paper *"testamentary in character, and consequently not effective to vest a present interest. . . ."* Perhaps the leading case on this principle is *Turner v. Scott,* 51 Pa. 126. In that case grantor made a deed of real estate which provided that the "conveyance in no way [was] to take effect until after [his] decease." It was held that the document was a testamentary instrument. In *Zell's Estate,* 329 Pa. 312, 198 A. 76, Mr. Justice LINN, *citing Turner v. Scott,* supra, with approval, says (page 314) *"If the instrument is a legal declaration of . . . intention directed to be performed after . . . death it is a will."* In *Knoll v. Hart,* 308 Pa. 223, 162 A. 228, an interest in a newspaper was assigned and conveyed with the provision that ". . . the actual possession . . . [was] to become effective at and immediately upon my decease." The writing was held to be testamentary in character. In *Gibson's Estate,* 128 Pa. Superior Ct. 44, 193 A. 302, a paper in the form of a judgment note, containing a direction that after the death of maker certain things were to be performed, was construed to be testamentary in character. In *Waltman v. The Germantown Trust Company,* 92 Pa. Superior Ct. 480, the depositor endorsed on the signature card that, in the event of his death, the trust company was to pay

the balance in the account to his wife. It was declared to be testamentary in character.

In the present case the interest of the daughters in the fund depended upon the exercise by the mother, during her lifetime, of her *sole* right to receive payment of the fund. She could have withdrawn the *entire amount,* thereby effectively revoking the gift to her survivors. This was the effect of the written insertion on the printed card. The fact that it deprived the daughters of any vested interest in the fund until her death, although they were named on the card as joint owners, was not violative of any law. The Banking Code of May 15, 1933, P. L. 624, Section 903, provides: "A. Whenever a deposit shall be made in an institution in the names of two or more persons, the institution shall not pay out such deposit, any part thereof, or interest thereon, except upon the proper check, order or receipt, as the case may be, of both or all of such persons, *unless at the time of making the deposit a different arrangement shall have been specifically provided for. . . ."* Here the written provision on the card specifically provided for the exclusion of the daughters from participation in the fund until the death of the mother, leaving the fund her property during her lifetime, subject to her disposal, with the direction that it be paid to her daughters upon her death. The deposit agreement was therefore testamentary in character, and the balance remaining in the account was part of the mother's gross estate. The evidence of the daughters was entirely insufficient to establish that any part of the fund was their individual property. The money was deposited in one sum by the mother, and while the daughters alleged that it represented in part their individual earnings, which she had "saved" for them, they did not indicate how much of the sum represented such earnings, or whose property they were at the time of the deposit. The daughter Helen testified that she "gave" her earnings all to her mother. The daughter Susanna testified that the fund represented

the earnings of *her mother* and sister, as well as her own, which her mother had saved. None of this evidence was inconsistent with the mother's absolute ownership of the sum deposited at the time the account was created.

The present case differs very materially from *Lewis' Estate,* 139 Pa. Superior Ct. 83, 11 A. 2d 667. In that case the owner of a savings account presented a letter to the bank of deposit directing that the account "be made a joint account with my son . . . *the money to be drawn only in case of my death."* It was held that a vested interest in the fund had been presently created for the son although his enjoyment was deferred, and that the instrument was not testamentary. There, however, no money was to be drawn by either the son *or the donor* during the latter's lifetime. The fund could not be diminished or completely consumed by the donor, assuming, as the Superior Court apparently did, that the gift was *irrevocable.* In the present case, however, the mother could, and *did,* draw upon the fund during her lifetime, retaining thereby the power to revoke the gift to the daughters, who were entitled to payment only after her death.

Even if this instrument were not testamentary, the plaintiffs were entitled to a directed verdict because the parties themselves had expressly agreed in writing, under seal, that "anything upon which [the mother's] name appears" should constitute a part of the mother's estate, and be divided equally among all the children. The intention of the children in making this agreement was to share all of the mother's property pro rata, despite the fact that certain children had been favored by the mother in her creation of several joint bank accounts. The mother's name *did* appear upon this account. It appears upon its face that the very purpose of the agreement was to prevent what actually occurred.

All the children, including defendants, construed the agreement as above indicated. Two other of the four bank accounts were in the joint names of the mother and certain of the children. These other funds were dis-

tributed equally among the children in accordance with the family agreement. This account being precisely in the same situation as the others, no reason is apparent why it should be excluded from the operation of the agreement.

Defendants allege that the fund was not mentioned in the agreement, and that its existence was not known to the plaintiffs when the agreement was entered into. However, *none* of the other accounts were specifically mentioned in the agreement, and if the existence of this fund was not known to plaintiffs it was because it had been purposefully concealed from them by defendants. The agreement, which provided that there should be included in the mother's estate "anything upon which her name appears", expressly applied to all such property *"whether discovered already, or whether it shall be discovered in the future."*

Even more specious is defendants' contention that at the time the agreement was signed this account was not one upon which their mother's name appears because they had, *while on their way to the family conference,* drawn out the money and deposited in their individual accounts. Obviously they cannot profit by their attempt to conceal from their brothers and sisters the existence of this account which their mother had created. The agreement clearly referred to anything upon which the name of the mother appeared at the time of her death. Defendants' assertion that they did not understand what they signed, although they are literate, and that they were told by the attorney who drew the agreement that "it did not mean anything" will not bear close scrutiny. It was read to them in its entirety, and pursuant to it, they joined with their brothers and sisters in the equal distribution of the other accounts.

Investigation of the record in the court below reveals that the administratrix accounted for all other funds in this estate, filed an account, distributed same in equal seventh shares, paid the inheritance tax and has been

discharged. We will not therefore require this fund to be paid to an administratrix d. b. n. for distribution in the Orphans' Court. We will treat it, as owned in common by the seven children, subject to whatever inheritance tax is due the Commonwealth. We assume that if any such tax has not been paid appropriate steps for its collection will be taken by those whose duty it is to collect the tax.

The judgment of the court below is reversed, and is here entered for the plaintiffs n. o. v. Costs to be paid out of the fund.

DISSENTING OPINION BY MR. JUSTICE DREW:

I am firmly convinced that the majority opinion is based on an erroneous interpretation of law, and that the reversal of the learned court below is contrary to law and justice.

The majority admit that "Had the *printed* portion of the deposit card remained unmodified by any other terms, the defendants would have been joint owners of the fund, with the right of survivorship, and the fund, or any portion thereof, would not have been a part of the mother's estate". But the majority hold that since there was upon the card the written words "Pay to Dtrs [daughters] only after death of mother" no present interest vested in the daughters, that the written words postponed enjoyment until after the mother's death, and that therefore, the card was testamentary in character and the money passed to the mother's estate at her death. With this I cannot possibly agree.

The intention to create a joint account, with the right of survivorship, is unquestioned. That the money in the account, was the property of defendants was strongly asserted by them and not denied by anyone. They testified they lived with their mother until they were married, Helen when she was twenty-three and Susanna when thirty-five years of age. Each confirmed

the statement of the other that they worked and gave their wages to their mother to save for them. Helen said she worked for eight years as a domestic servant for $50.00 a month and gave all to her mother. Susanna said she worked from 1914 to 1931 as a domestic and later as a weaver in a silk mill, and gave her earnings to her mother. Both testified their mother did save the money for them and that the money in this account belonged to them. Plaintiffs, all brothers and sisters of defendants, who must have known whether or not what defendants said was true, testified, but did not deny that defendants worked as indicated and gave their earnings to their mother. Hardly anything could be more impressive of the integrity of defendants.

It is difficult to understand, with this testimony in the record, how any court can say defendants did not have a present vested interest in this bank account from the moment it was created. If only this testimony were in the case, it seems to me it should be determined that the intention of the parties to create a joint account, with survivorship, had been successful. Defendants certainly had a vested interest in their own money.

But that is not all. If defendants had no such personal interest in the money, they got a present vested interest in it at the time the account was created. The action of the mother in making the deposit on the terms stated in the card gave defendants, whose names appear thereon, a joint interest with right of survivorship. The modification "Pay to Dtrs only after death of mother" did not postpone their interest. The account was joint, they each had an equal interest in it. Upon the mother's death, the fund formed no part of her estate, but rather became the sole property of defendants: *Mardis v. Steen,* 293 Pa. 13, 141 A. 629; *Reap v. Wyoming V. T. Co.,* 300 Pa. 156, 150 A. 465; *Patterson's Estate,* 341 Pa. 177, 19 A. 2d 165.

It is well settled, as we said in *Knoll v. Hart,* 308 Pa. 223, 227, 162 A. 228: "In judicial construction one of

the principal tests as to whether a document is a will or a conveyance inter vivos is: Was an estate granted and when did the maker intend that the instrument creating it should be effective?" It is equally true, as stated by us in *Turner v. Scott*, 51 Pa. 126, 134: "The doctrine of the cases is, that whatever the form of the instrument, if it vest no present interest but only appoints what is to be done after the death of the maker, it is a testamentary instrument." With these principles definitely in mind, it readily appears that the signature card here in question is not a testamentary writing. That a present interest vested in the daughters when the account was opened is made clear by the fact that since the account was created in the names of the mother and her two daughters jointly, no withdrawals during the lifetime of the three depositors could legally be made from this account without the joinder of all: Michie on Banks and Banking, Vol. 5, ch. 9, §46, p. 105. See also the "Banking Code", Act of May 15, 1933, P. L. 624, Art. IX, §903.[1] When the fund was placed in the joint names of the mother and daughters, the mother surrendered all power within herself to revoke her act and have the account returned to her name alone: 7 Am. Jur., Banks, sec. 509.

The majority opinion cites a number of cases [2] in support of its decision that the writing in question is testa-

---

[1] "A. Whenever a deposit shall be made in an institution in the names of two or more persons, the institution shall not pay out such deposit, any part thereof, or interest thereon, except upon the proper check, order, or receipt, as the case may be, of both or all of such persons, unless at the time of making the deposit a different arrangement shall have been specifically provided for, or unless at a subsequent time all the parties agree to a different arrangement."

A national bank is subject to the laws of the state in which it is doing business in respect of its affairs unless the laws are inconsistent with the laws of the United States, or interfere with the bank's purpose, or destroy its efficiency as a federal agency: *Jenckes v. Deitrick*, 27 F. Sup. 408.

[2] In *Grady v. Sheehan*, supra, the paper there in question was lodged with the bank and stated that the account was joint with right of survivorship, but also provided that the survivor was to

mentary. It is my opinion this writing is not testamentary, the cases cited are not in point, and are easily distinguishable on their facts from the instant case. In all those cases it clearly appeared that the paper under consideration was testamentary in character, since there was no intention to vest a present interest, only to appoint what was to be done after the maker's death. As for instance, (*Grady v. Sheehan,* 256 Pa. 377, 100 A. 950) where it was directed that the survivor should pay the

apply so much of the account as may be necessary for the payment of the debts and expenses incidental to the last illness and burial of the one dying. In *Turner v. Scott,* supra, a man conveyed his farm to his son, subject to the provision that "this conveyance in no way to take effect till after the decease of the said . . . grantor." In *Zell's Estate,* 329 Pa. 312, 198 A. 76, the paper under consideration provided that decedent's administrators hand over to one Anna M. Shupert "immediately upon my death, an envelope marked for her, in my Safe Deposit Box in the Bryn Mawr National Bank", which envelope contained certain listed securities. In *Knoll v. Hart,* supra, the written instrument there in question was a paper, which Hart had executed prior to his death and delivered to one Knoll, wherein it was recited that the two had established a successful business, and that since Hart recognized the value of Knoll's services and was desirous of compensating him, that he, Hart, thereby sold, assigned, and transferred to Knoll, his heirs and assigns, a one-third interest in the property, etc., belonging to him [Hart] trading as the Chemical Publishing Company, "the actual possession by Edmund E. Knoll of said one-third interest to become effective at and immediately upon my decease." "I do further bind my heirs, executor or administrator . . . to make, execute, and deliver . . . such . . . instrument in writing as may be deemed essential or necessary to fully vest the possession . . . in said Edmund E. Knoll." In *Gibson's Estate,* 128 Pa. Superior Ct. 44, 193 A. 302, the paper being considered was a printed judgment note, in which certain of the words were stricken out, and which contained a direction that, after the death of the maker, there was to be collected from his estate and paid to the order of a named person a stated sum weekly, and which recited the reason for the gift. In *Waltman v. The G. T. Co.,* 92 Pa. Superior Ct. 480, the owner of a savings account endorsed on the signature card that in the event of his death, he authorized the trust company to pay over to his wife the balance of money standing in the account.

debts and funeral expenses of the one dying. Certainly interest and enjoyment was postponed there, not only until after death but until all the debts and funeral expenses were paid; only then, if something were left, could the survivor be allowed to enjoy it. How different the facts of the instant case, where not anything was appointed to be done after the mother's death. Here the interest was vested in all three the moment the account was opened but the time of payment to defendants was postponed. Since none of the three could have drawn the fund without the consent of the others,[3] not anything was gained by anyone by placing the injunction—payable only after death of mother—on the card. This written statement is in no way inconsistent with or repugnant to the printed provision expressly creating a joint tenancy with right of survivorship.

In *Lewis' Estate,* 139 Pa. Superior Ct. 83, 11 A. 2d 667 (a case very similar to the instant case), the writing under consideration was held not to be testamentary in character. There, the decedent, who had a savings account, addressed and signed a letter to the bank, dictated by the cashier at her suggestion, which provided that "I hereby direct that the savings account . . . be made a joint account with my son . . . *the money to be drawn only in case of my death.*" (Italics added). Judge BALDRIGE, speaking for a unanimous Superior Court, said (pp. 85-6) : "The final phrase 'the money to be drawn only in case of my death' is not inconsistent with an immediate disposition and does not make the writing testamentary in character. *Where a present interest is vested, the fact that the actual enjoyment or payment of the money is postponed until after the death of the donor does not make the instrument testamentary* (28 C. J. p. 624) as the mere deferring of

---

[3] *Gallagher's Estate,* Orphans' Court, Dauphin County (July 3, 1944), not yet reported.

payment until after the death of the maker is not of itself sufficient to make the writing testamentary: *Eisenlohr Estate (No. 2)*, 258 Pa. 438, 441, 102 A. 117; *Hess v. Jones*, 335 Pa. 569, 573, 7 A. (2d) 299". (Italics added). This is the law of the instant case and should be followed here.

The trial judge, at the conclusion of the testimony, submitted two questions to the jury to be answered in the form of a special verdict: (1) Did the parties intend to include this deposit under the terms of the written agreement and (2) Did the defendants agree to divide the fund equally with all brothers and sisters, and were defendants guilty of fraud in failing to divulge the fact of withdrawal and division. The jury answered these questions in the negative and found in favor of defendants.

It is well settled that the construction of a written contract is a matter for determination by the court: *Kolman v. Kolman*, 335 Pa. 113, 6 A. 2d 532, *Pears v. Shannon*, 329 Pa. 278, 198 A. 307. I agree with the majority that it was error for the learned court below to have submitted the interpretation of the contract made by all the children to the jury, for there is no ambiguity in the agreement. However, plaintiffs were not harmed by this action, because the court was bound as a matter of law to have reached the identical conclusion at which the jury arrived. The intent of the parties, expressed in clear and unambiguous language, is that only the "estate" of their mother was to be covered by the provisions of that agreement. Since the fund in question never constituted part of the mother's estate, the contract of the children had no effect upon it.

I would, therefore, affirm the judgment entered by the court below.

Chief Justice MAXEY and Mr. Justice HUGHES join in this dissent.